CHICAGO AND ALTON RAILROAD COMPANY

*v.*

JOLIET, LOCKPORT AND AURORA RAILWAY COMPANY.

*Filed at Ottawa November 20, 1882—Rehearing denied March Term, 1883.*

1. EMINENT DOMAIN—*condemnation of right of way for a railroad across the right of way and track of another railroad—covenant to construct and keep in repair the crossing—its admissibility in evidence—and its effect upon the question of damages.*   In a proceeding for the condemnation of a right of way for a railroad across the right of way and railway track of another railroad, the petitioning corporation offered in evidence a stipulation or covenant, regularly signed by the petitioner, in which it was expressly stipulated by the petitioner "that it would and should, at its own expense, put in, and thereafter maintain in suitable and proper repair, the frogs and crossing across two main tracks of the defendant; that this stipulation should be binding on the successors and assigns of said petitioner so

long as a grade crossing should be maintained at the crossing the right of way for which was being condemned therein." It was *held*, this was a valid obligation, enforceable against the petitioner, and its successors and assigns, and was properly admissible in evidence.

2. The obligation being a valid one, securing the construction and maintaining of the proposed crossing at the expense of the petitioner, its successors and assigns, the cost thereof could not become an element of damages in favor of the defendant corporation, and would operate to exclude any evidence on behalf of the defendant on that subject.

3. The stipulation is sufficiently definite as to the manner in which the work of making the crossing was to be done, and as to what extent it would affect the defendant. A "suitable and proper" crossing, is a phrase well understood by civil engineers and practical railroad men. Any marked departure from the stipulation in that regard would afford to the defendant a right of action for the recovery of any damages occasioned thereby.

4. The force and effect of the obligation, as an instrument of evidence, and as to the exclusion of all question of damages to arise from the expense in constructing and maintaining the crossing, in the proceeding for condemnation, are not at all impaired by the suggestion that it is a mere promise—an undertaking—which, by reason of financial embarrassment, or from other causes, may not be performed. It is a valid obligation. The covenant is thought to run with the land, and for any breach thereof a right of action is given which will afford complete indemnity to the company whose road is proposed to be crossed. It can not be presumed, in the absence of testimony on the subject, that the petitioner will be unable, from any cause, to perform its obligation.

5. In this case the proposed crossing was upon grade, and it would be the duty of both parties to see to it that the crossing was properly constructed, and maintained in a safe condition, and in this respect it is to be distinguished from the case of *Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 Ill. 142, and 96 id. 274. In that case the crossing was not upon grade, but was an under-crossing, made by cutting through a high embankment under the track of defendant's road, thereby removing all the support it had. It did not appear that the petitioning corporation was under any obligation by its duty to the public as a common carrier, or by any stipulation or otherwise, to keep defendant's track above its own in a suitable and safe condition, so the expense incurred by the defendant company in that regard was a very proper element of damages in that case.

6. SAME—*effect of stopping a train on approaching a railway crossing upon the hauling capacity of the engine—as an element of damages.* It was represented in the case that if the crossing were established at the point proposed, the defendant company, in conforming to the requirement of the statute in respect to the stopping of trains on approaching a railroad crossing,

at certain distances therefrom, would be compelled to bring its trains to a halt upon an ascending grade, and that thereby the hauling capacity of its engines would be impaired, and it was contended that such impairment ought to be considered as an element of damages. But the statute in question is simply a police regulation, with which all railroad companies are required to comply, the existence of which is subject to the will of the legislature, so it is of too uncertain duration to be made the subject of damages as for a perpetual inconvenience and injury.

7. Moreover, it is a principle underlying all conduct, that neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation. Obedience to law is a service all citizens and corporations are bound to render to the State, and no damages can grow out of such act of obedience.

APPEAL from the County Court of Will county; the Hon. BENJAMIN OLIN, Judge, presiding.

Mr. GEORGE S. HOUSE, for the appellant, made the following among other points in his argument:

Appellant can not, by any agreement with appellee, shift the burden the law imposes on it, of keeping its tracks at the point of intersection in a safe and secure condition. *St. Louis, Jacksonville and Chicago R. R. Co.* v. *Springfield and Northwestern R. R. Co.* 96 Ill. 274.

The expense and loss thus created by the crossing is not for appellant's benefit, and it ought not to be charged with it. If appellant is entitled to be paid this sum in money, it is a vested right, of which it can not be deprived except on compensation. The compensation given it by the law can not be liquidated or satisfied in anything but money. Appellee can not compel appellant to accept a mere promise in lieu of money. If appellee fails to comply with the terms of its stipulation, it simply constitutes a cause of action, and nothing more. Appellee may not be able to perform the agreement, or the performance tendered or made by appellee may not be such as appellant shall regard as adequate, suitable and proper. In such case, where is appellant's remedy?

It is the duty of the petitioner seeking to condemn a right of way over the right of way and tracks of the defendant company, to pay to the defendant a sufficient sum of money to enable the defendant to place and maintain its tracks at the point of crossing in as safe a condition, as nearly as the nature of the case will permit, as they were before the crossing was made. *Chicago and Alton R. R. Co.* v. *Springfield and Northwestern R. R. Co.* 67 Ill. 144; *St. Louis, Jacksonville and Chicago R. R. Co.* v. *Springfield and Northwestern R. R. Co.* 96 id. 275.

The additional delays and inconvenience to appellant in being compelled to stop before reaching the proposed crossing, are proper to be considered as an element of damage. By making the new crossing, appellant is brought under the statute requiring such stoppage, etc., not for its benefit, or on its request for the benefit of the petitioner, and upon its motion. *St. Louis, Jacksonville and Chicago R. R. Co.* v. *Springfield and Northwestern R. R. Co.* 96 Ill. 275; *Old Colony and Fall River R. R. Co.* v. *County of Plymouth,* 14 Gray, 155; *Lake Shore and Michigan Southern R. R. Co.* v. *Chicago and Western Indiana R. R. Co.* 100 Ill. 21.

Messrs. GARNSEY & KNOX, for the appellee:

The stipulation filed with proof that it was the act of the corporation, and thus binding on it, was proper. It removed from the case contingent and uncertain elements, which might amount to a legal damage, and might not. *J. and S. R. R. Co.* v. *Kidder,* 21 Ill. 131; *St. Louis, Jacksonville and Chicago R. R. Co.* v. *Mitchell,* 47 id. 165; *Elgin* v. *Eaton,* 83 id. 537; *Hyde Park* v. *Andrews,* 87 id. 230; *Hayes* v. *Ottawa, Oswego and Fox River Valley R. R. Co.* 54 id. 375; *Peoria and Rock Island R. R. Co.* v. *Birkett,* 62 id. 335.

The principle of the following cases is in accordance with the filing of this stipulation, as well as the cases before cited. They decide that net, and not gross damage, is to be paid for,

if we may use such an expression. *Curry* v. *Mt. Sterling*, 15 Ill. 322; *Peoria, Pekin and Jacksonville R. R. Co.* v. *Laurie*, 63 id. 264; *Mix* v. *Lafayette, Bloomington and Mississippi Ry. Co.* 67 id. 319; *Page* v. *Milwaukee and St. Paul Ry. Co.* 70 id. 324; *Chicago and Pacific R. R. Co.* v. *Francis,* id. 238; *Keithsburg and Eastern R. R. Co.* v. *Henry,* 79 id. 294; *Hyde Park* v. *Dunham,* 85 id. 570; *Hyslop* v. *Finch,* 99 id. 171.

Appellant is not entitled to recover damages for inconvenience caused by being obliged to stop its trains at the proposed crossings, nor for an increase in the expense of operating its road, caused thereby, such stop being made in obedience to the law. Sess. Laws, 1871-2, p. 634, title, and sec. 1; Rev. Stat. 1874, p. 8, title, p. 809, sec. 12; Repealing Statute, Rev. Stat. 1874, sec. 351; Cooley on Const. Lim. (2d ed.) 573–580; *Thorpe* v. *B. and R. R. R. Co.* 27 Vt. 140; *G. and C. U. R. R. Co.* v. *Loomis,* 13 Ill. 548; *Ohio and Mississippi R. R. Co.* v. *McClelland,* 25 id. 141; *Munn* v. *People,* 69 id. 80; *Ruggles* v. *People,* 91 id. 256.

The foregoing cases are on the general subject of the exercise of the police power of the State. The following are all upon the precise question here involved, and the last cited is precisely like the present one: *Fitchburg R. R. Co.* v. *B. and M. R. R. Co.* 3 Cush. 58; *Davidson* v. *Same,* id. 105; *Parker* v. *Same,* id. 113; *Old Colony R. R. Co.* v. *Plymouth,* 14 Gray, 155; *Grand Junction R. R. Co.* v. *Commissioners of Middlesex,* id. 553; *Bridgeport* v. *New York and New Haven R. R. Co.* 36 Conn. 255; *Lake Shore and Michigan Southern R. R. Co.* v. *C. S. and C. R. R. Co.* 30 Ohio St. 604.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

This proceeding was commenced under the Eminent Domain act of 1872, on the petition of the Joliet, Lockport and Aurora Railway Company, to condemn the right of way for its own track across the right of way and track of the Chicago and Alton Railroad Company. The width of the right of

way desired, and the angle at which petitioner's road will cross defendant's road at the point indicated, are stated with sufficient certainty in the petition to give a clear understanding of the manner defendant's road-way will be affected. So, also, the use petitioner proposes to make of the strip of land sought to be condemned is stated to be, to build its railroad thereon, and operate its main tracks over and across the same, and it is then added, petitioner does not desire to appropriate and use such strip of land to its exclusive use, but desires to use the same without prejudice to the rights of, and use thereof by, defendant, not inconsistent with the use thereof by petitioner for its main track or tracks. The defendant corporation answered the petition, and then filed a cross-petition. As the case is presented in this court it will not be necessary to state the contents of either of them. The case was submitted to a jury, who, after viewing the premises and hearing the evidence, assessed defendant's damages at $150, and for which judgment of condemnation was rendered.

The first objection insisted upon to the regularity of the proceedings in the trial court arises on the admission by the court, over the objection of defendant, as evidence, a stipulation, regularly signed by petitioner, of which, omitting the date and signatures, the following is a copy: "In the above entitled cause, now pending in the county court,   *   *   * and about to be laid before a jury impanelled for that purpose by the court, it is hereby expressly stipulated by said petitioner, the Joliet, Lockport and Aurora Railway Company, that it will and shall, at its own expense, put in, and thereafter maintain in suitable and proper repair, the frogs and crossing across two main tracks of the defendant; that this stipulation shall be binding on the successors and assigns of said petitioner so long as a grade crossing shall be maintained at the crossing, the right of way for which is being condemned herein." Notwithstanding this covenant on the

part of the petitioning corporation, defendant offered to prove what would be the cost and expense necessary to keep a crossing on its railroad, at the point where it is proposed to make this crossing, in proper and suitable repair, including frogs, rails, or other appliances necessary to a proper railroad crossing, and the necessary renewals. The court sustained an objection to the giving of the proposed testimony, for the reason petitioner had stipulated to construct and maintain the crossing in proper repair at its own expense, and hence defendant could not account such expense as an element of damages, and in its charge the court made its instructions to the jury conform to this view of the law. If it shall be held the agreement of petitioner to construct, and thereafter maintain, at its own expense, a proper and suitable crossing at the point in question, is a valid obligation, enforceable against petitioner, its successors and assigns, and was properly admissible in evidence, it follows, as a matter of course, the decisions of the court in rejecting the evidence tendered and in giving instructions in respect to the same matter, were entirely correct. That the stipulation was executed in a manner to be obligatory on petitioner, its successors and assigns, is so manifest that no point is made against it in that respect, and under the previous decisions of this court no reason is perceived why it was not admissible in evidence.

Since the decision in the case of *Jacksonville and Savanna R. R. Co.* v. *Kidder*, 21 Ill. 131, the practice has always been, in condemnation cases, to admit in evidence the plans of the work proposed to be done or the land taken, otherwise it could not be so well known how the projected improvement would affect the residue of the property. It is practicable, of course, to so construct a public improvement as to make it of greater or less damage to the land over which it passes, and the extent of such injury can not be justly estimated unless the character of the work to be done shall be first ascertained from plans and specifications that shall be there-

after adhered to by the corporation condemning the land to its use.   In the case of *St. Louis, Jacksonville and Chicago R. R. Co.* v. *Mitchell,* 47 Ill. 165, it was held the cost of erecting and maintaining the fences along the track was a proper element of damages in condemning land for railroad purposes, and accordingly evidence offered tending to show the company had contracted for the building of the fence through the owner's land within a short period, was deemed admissible, and it was decided to be error in the trial court to exclude it.   In *Hayes* v. *Ottawa, Oswego and Fox River Valley R. R. Co.* 54 Ill. 373, it was held a stipulation, the company condemning the land would erect certain depots of a character designated, and would construct suitable farm crossings, and maintain the same with bars, gates or cattle guards, as should be necessary for the accommodation of the owner of the land through which the railroad would pass, and would build and maintain a fence on each side of the track, was admissible in evidence.

Any marked departure from the plans, as shown in the profile submitted, or from the stipulation in evidence, as to the character of the work to be done, would subject the corporation making the condemnation to an action for damages, in favor of the land owner.   The cases *ut supra* settle this doctrine fully, and in *Peoria and Rock Island Ry. Co.* v. *Birkett,* 62 Ill. 332, it was said: "The company must construct the road as indicated by its plans and maps introduced on the trial.   If these should be changed, the land owner could recover any damages resulting from the change."   The case being considered comes precisely within the principle of the cases in this court.   The stipulation in evidence shows definitely how the work of making the crossing will be done, and to what extent it will affect defendant.   A "suitable and proper" crossing, is a phrase that must be well understood by civil engineers and all practical railroad men.   As to the character of the work to be done at the crossing there is no

ambiguity in the stipulation. In this respect it is certainly as definite as any stipulation found in any of the reported decisions of this court, where the proceeding was between a citizen whose land would be taken and the corporation exercising the right of eminent domain, and it is apprehended the rule applicable in such cases is the same where both parties are railroad companies. The law, of course, makes no distinction as to the character of the parties concerned.

The objection of most seeming plausibility to the admission of the stipulation in evidence in this case is, it is a mere promise,—an undertaking,—and if petitioner fails to comply with its terms it simply constitutes a cause of action,—nothing more. It is not that it is a promise or an undertaking, for if it is valid, and should be performed as fully as is covenanted it shall be, it would work no injury to defendant; but the objection is, the promise or undertaking may not, on account of financial embarrassment, or from other cause, be performed by petitioner, and that would leave defendant with simply a cause of action,—nothing more. So runs the argument of counsel. The same argument might have been made in all cases where stipulations have been made by the corporation condemning land for public uses, and on failure of performance the land owners would have an action, as the cases all hold; but such stipulations have not been rejected for that reason. Such covenants are thought to run with the land, and the right of action would always afford complete indemnity to the land owner. The rule applicable to private owners in this respect applies with equal force to railroad or other corporations. In case of any failure to perform the stipulation on the part of petitioner, it is asked, what remedy has defendant? Precisely the same as the private land owner would have against the corporation exercising the right of eminent domain, and making a stipulation for his benefit. No importance need be attached to the suggestion petitioner may not perform its undertaking, but it may be answered by

a reason having nothing more in its support,—that is, suppose defendant should recover damages for the perpetual maintenance of this crossing, and should fail to keep it in suitable repair, what remedy would petitioner have? Simply an action, and nothing more. In the absence of all evidence, there is no warrant for saying defendant is, financially, more able to perform its undertakings in this respect than is petitioner, or that it is more likely to do so. Both parties are common carriers of passengers and freights, and both are under the highest obligations to the public to observe that this crossing is kept in repair, so that it may be entirely safe for the passage of trains, and it may reasonably be presumed both corporations will omit no duty in that regard. One party is as much interested in its maintenance in a suitable condition as is the other, and should it become unsafe through use, or for other cause, either party might, and it would be its duty to, make all needed repairs, and on the party obligated to maintain such crossing would rest the expense of such repairs, and the same might be recovered in an action.

The case being considered bears no analogy to *Chicago and Alton R. R. Co.* v. *Springfield and Northwestern R. R. Co.* reported in 67 Ill. 142, and also in 96 id. 274. That, it will be observed, was not a grade crossing, but was an undercrossing, made by cutting through a high embankment under the track of defendant's road, thereby removing all the support it had. Nothing appears in the report of the case that shows the petitioning corporation was under any obligation by its duty to the public as a common carrier of passengers or freights, or by any stipulation or otherwise, to keep defendant's track above its own in a suitable and safe condition. In the first opinion delivered in the case it was said, defendants, "as common carriers of persons and property, would after, as before, be subject to the duty of keeping their track at the point in question in a safe and secure condition, and

the burden would not be shifted by the judgment of condem-
nation upon" the petitioning corporation. It was for that
reason it was held that the evidence of the cost of erecting
and maintaining a bridge over the track of petitioner's road
was proper evidence on the assessment of damages, and that
defendant was entitled to have such sum for damages as
would enable it to construct and keep in repair all such
works as might be necessary to keep its track in a safe and
secure condition. The principle of that case has no applica-
tion to the case in hand. Here, both tracks cross on grade,
and the railway company asking the condemnation to be
made is under the highest obligation to the public as a com-
mon carrier of persons and property, as well as its stipula-
tion in favor of defendant, and which is made a part of the
record, to construct and keep the crossing in a safe and
secure condition for the use of both carriers, and that obli-
gation, resting as it does on a sufficient and continuing con-
sideration, will endure as long as it will be necessary to
maintain such crossing at the point in question. There
was, therefore, no error in admitting the stipulation in evi-
dence,—indeed, it would have been error to have excluded it.

Another ground relied on with much confidence is, that by
the rulings of the trial court defendant was denied the privi-
lege to prove what effect, if any, the construction of the
crossing at the point in controversy would have on the haul-
ing capacity of its engines employed in drawing both pas-
senger and freight trains, in consequence of having to stop
its trains in obedience to that provision of the statute which
requires that all trains run on any railroad in this State
which crosses any other railroad on the same level shall be
brought to a full stop within certain distances specified,—
and that, it is said, is error. The court, in giving instructions
on this branch of the case, made them conform to the theory
on which the evidence tendered was excluded, and the rulings
in both respects will be considered together.

It appears from the evidence introduced as to the grade of defendant's road, that the track, both ways from the point where it is proposed to construct the crossing of petitioner's road, is practically on a level.  A change of grade commences two hundred feet south.  It begins to descend from there, and for a distance of four hundred feet it is thirteen and two-tenths feet per mile.  Commencing at the point of intersection and running north, as the evidence is understood, defendant's track, for some distance, is practically on a level, and then commences an elevation, the altitude per mile being stated.   In view of this condition of defendant's track at and near the point of intersection of the two roads, both north and south, defendant asked a witness who was familiar with the grade of the road at the place of intersection, the following question:   "Upon the theory that a crossing were to be made at this point of this proposed crossing, and the trains of the Chicago and Alton railroad were to stop at a point distant not less than two hundred feet or more than eight hundred feet from the center line of that crossing, and start again, coming to a dead halt not nearer than two hundred feet or distant more than eight hundred feet of the proposed crossing, what effect, in your judgment, would it have on the hauling capacity of the engines employed by the Chicago and Alton railroad in their service past this point, —in their freight service past this point?"  This question was objected to, on the ground defendant had no right to recover for any damages which might be occasioned by reason of its servants having to stop their trains at this crossing in obedience to the law.   In sustaining the objection the court said:   "If the defendant proposes to show that these stops or halts will be occasioned, not by force of any statute or police regulation requiring stops or halts on approaching railroad crossings, but, independent of such police regulations or statute, will be required by reason of the proposed track of the petitioner across the railroad track of the defend-

ant, then I think the question may be answered as being competent on this point, otherwise the objection is sustained." Objections to other questions of the same import, only differing in phraseology, were sustained by the court. Exceptions to the rulings of the court were taken in the usual manner upon the interrogatories propounded, so far as the interrogatories involved the existence of any law or police regulation requiring the stopping of trains at railroad crossings.

The questions arising on the rulings of the court on this branch of the case are of first impression in this court, and have been considered with that care their importance demands, and the conclusion reached is, the rulings of the court may be sustained, both on principle and authority. Without the construction of the crossing asked for by the petitioner, it is said, obedience to law in reference to stopping trains at crossings of other railroads is not demanded of defendant in running its trains between Lockport and Joliet, and because after the crossing is constructed defendant will be compelled to stop its trains on approaching such crossing from either direction, it is argued the inconveniences and other embarrassments that will be experienced are elements to be considered in estimating the "just compensation" that should be paid for the injuries sustained. This is a mistaken view of the law. The statute in question is simply a police regulation, valid and binding on all railroad companies in the State, whether incorporated before or since its passage. Its duration rests in the will of the General Assembly. The decision may be placed on a principle underlying all conduct,—that is, that neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation designed to secure the common welfare. That is a duty every one owes to government for the protection it affords. Corporations, as well as citizens, are subject to the police power of the State. So far as defendant would suffer injury on account of having to stop its trains at the

crossing for reasons other than compliance with the statute, the court distinctly ruled, evidence of such damage, if any, might be given. The rulings of the court in that regard were as broad and liberal as the law will warrant. Under the laws of this State, (and so its policy is,) one railroad has the right to cross the track of another, and if they can not agree upon the amount of compensation to be made therefor, or as to the points and manner of such crossing, the same shall be ascertained and determined in the manner prescribed by law. Should it be held that before a new railroad could be laid across the track of a railroad previously constructed, the damage for any inconvenience such company might suffer on account of having to submit to and observe police regulation in regard to the conduct of its business thereafter should first be ascertained and paid by the new road, it would amount to a practical prohibition on the construction of·new railroads in the State. A railroad company has no vested right to run its trains in defiance of public statutes designed to promote the public good, and no principle is perceived on which such corporations can demand compensation for obedience to such statutes. Immunity from police regulations and restraints would secure to corporations rights not possessed by citizens of the State.

Unless, therefore, every railroad corporation takes its right of way subject to the right of the public to have other roads, both common highways and railways, constructed across its track whenever the public exigency might be thought to demand it, the grant of the privilege to construct a railroad across or through the State would be an obstacle in the way of its future prosperity of no inconsiderable magnitude. The claim made for damages, in this respect, has neither reason nor the weight of authority for its support. In *Railway* v. *Railway*, 30 Ohio St. 604, it is well said: "While the elder road can demand compensation for its property to the extent of its appropriation, it has no right to demand tribute from

26—105 Ill.

the junior road for the enjoyment of the same corporate franchises that it possesses. Each owes its authority to operate its road to the same source,—the State,—and neither has the right to tax the other for the enjoyment of these mutual privileges. It is true that the crossing imposes a new burden, but it is one to which it is subject by the nature of the case and the terms of its charter." Other courts of acknowledged authority sustain the same general doctrine. (*Massachusetts Central R. R. Co.* v. *Boston, Clinton and Fitchburg R. R. Co.* 121 Mass. 125.) But aside from all authority, on principle, no compensation ought to be allowed, in any case, for mere obedience to law. That is a service all citizens and corporations are bound to render to the State in consideration of the common protection bestowed. See *Peoria and Pekin Union Ry. Co.* v. *Peoria and Farmington Ry. Co.* (*ante,* p. 110.)

The point is made, both by the argument and the instructions asked by defendant, that on account of defendant having to cause its trains to be stopped in compliance with the statute, there is a reduction in the hauling capacity of defendant to do business at and over the point of such crossing, and hence it should be paid in money a sum sufficient to make good any reduction in the hauling capacity of its engines that may be shown by the evidence. Beyond mere nominal damages it is difficult to adopt any rule for the admeasurement of any actual damages in such cases. It would involve the consideration of so many collateral facts as would make the claim insisted upon shadowy and uncertain. What is the capacity of defendant's engines to move trains, would have to be ascertained by first ascertaining their utmost capacity at the different grades on its entire line of road. This court may take judicial notice of what may be known by common observation. So it may be assumed defendant's main line of road is well nigh, if not quite, three hundred miles in length. To ascertain the capacity of de-

fendant's engines at the most difficult grade on the entire line would necessarily require considerable measurements, and many experiments.   When that fact shall have been ascertained, the embarrassment in arriving at a conclusion as to the hauling capacity of such engines at the crossing in question has only been met, but not overcome.   Are there no other crossings of other railroads where the law makes it obligatory on defendant to cause its trains to come to a full stop, equally as difficult as this one?   Should the difficulty at this point be removed, could they surely pass others, hauling the same number of cars or coaches?   But a still more troublesome question remains.   Would it be practicable to prove when, or how often, if ever, the necessity would exist to move as heavy trains at this point as elsewhere on defendant's line of road?   There may be, and doubtless are, many through trains over defendant's road that would require the same motive power on the entire track, but at what point shall the capacity of its engines be estimated?   Shall it be at this crossing, or elsewhere on the road?   These and many other difficulties that might be suggested make the class of damages insisted upon too remote, uncertain and shadowy to be considered as an element in the actual damage sustained. The rule on this subject is stated in *Jones* v. *Chicago and Iowa R. R. Co.* 68 Ill. 380, to be, that the. amount allowed should be sufficient to cover all actual damage by reason of the construction of the road, for the land taken, for all physical injuries to the residue, and for all inconveniences of every character produced; but nothing should be allowed for imaginary or speculative damages, or such remote or inappreciable damages as the imagination may conjure up, and which may or may not occur in all the future.   That has been done in this case.   All the actual damage defendant will suffer has been liberally compensated by the judgment rendered, but nothing was, and nothing should be, allowed for those possible difficulties and embarrassments that may

never be experienced by defendant in the profitable and successful transacting of its legitimate business.

The judgment does substantial justice, and must be affirmed, which is done.

*Judgment affirmed.*

DICKEY and SHELDON, JJ., dissenting.

Separate opinion by Mr. JUSTICE SCHOLFIELD:

Although concurring in the opinion that appellant is not entitled to recover for damages presumably to be sustained by reason of being compelled by statute to stop its trains before crossing the track of appellee's road, yet, since the language here employed does not fully and accurately express my opinion, I prefer to briefly state, in my own way, the views I entertain upon this question.

I am unable to perceive any distinction, in principle, between cases where, by statute, a railroad company is required to stop its trains before crossing the track of another road, and cases where the same stoppage is rendered necessary by reason of the prior occupancy of the way by the cars on the other road, or by reason of danger of collision with the cars of the other road. In either case, if the company thus compelled to stop its trains has a legal right to continuous and unobstructed passage upon its track, such stoppage must invade that right, and in neither case, if it does not have such right, can there be any legal invasion of a right for which damages can be recovered.

The inquiry then must be, has appellant here shown a *franchise* (that is, a legal property right,) to move its cars from one end of its road to the other, without other hindrance or delay than such as was necessitated by the existence of things when its charter was granted? It is not sufficient to show that it has a property right to use its track as a railroad, to the exclusion of all others,—no one denies that.

But even that is subject to condemnation, and when another road has condemned and paid for the privilege of using so much of that track as is devoted to its crossing, that property in the track is compensated for, and each road then, with reference to that much of what was before the property of the one, is an owner in common with the other, and equally entitled to its use, still leaving the question whether the company whose road is to be crossed, has, in addition to the ownership of its tangible property, an ownership of an intangible property, consisting of a mere prior right of passage.

It needs no demonstration to prove that mere priority of occupancy or use gives no priority of right to that which is free to all,—and this, obviously, includes the right of locomotion. A railroad company's right of moving its trains differs only from rights of locomotion generally, in that it must always move, and can only move upon the line of its tracks, and while it has this right, natural individuals and corporations have the same right of locomotion that it has,—not upon its tracks, without paying for them, but generally. Neither has precedency, but all are entitled to it as a common right. If this were not so, in a highly improved and old settled country the last comers would find the entire country preoccupied, so that locomotion would be practically, if not literally, impossible. The development of the country, its material prosperity, and even the comfort and convenience of the citizens, render it necessary that railroads should be built and operated in every direction, and so, necessarily, oftentimes crossing each other. And this necessity has always been so obvious that it can never be presumed the legislature has bound its hands in regard to it, by contract in the nature of a grant, in the absence of unmistakable language to that effect,—if, even then, it could be held to have done so,—for it would, in effect, be parting with one of its sovereign rights, which is indispensable to the welfare of the State. See *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420.

Appellant's charter contains no contract obligating the State not to charter or permit the building of railroads crossing its track, or that passage upon its line of railway shall not be delayed or hindered. It simply creates a corporation, with the usual powers to construct and operate a railroad. In addition, therefore, to the right to be a corporation, the privilege of running the road and taking tolls for fare and freight is the essential franchise conferred. *Thorpe* v. *R. and B. R. R. Co.* 27 Vt. 146.

If appellant could claim, as a part of its franchise, that it was entitled to pass its cars from one end of its line to the other without any other hindrances, delays or burdens than those in existence when its charter was granted, then any statute subsequently passed, requiring its cars to slacken speed or stop, where before they were not required to slacken speed or stop, or requiring a care and labor not then required, would impair the obligation of the contract evidenced by its charter, and be in contravention of section 10, article 1, of the constitution of the United States, and hence void. The opening of new common highways across railroad tracks necessarily increases the care and labor of the railroad companies in order to avoid collisions. Where villages or cities spring up along the lines of railways, and their streets are laid out across the railway tracks, the care and labor to avoid collisions is very materially increased, and the speed of trains must, of necessity, be to some extent slackened. In all these cases, if the railroad charter is held to amount to a contract that passage upon the line of its railway shall not be delayed, hindered or burdened, the highways and streets can not lawfully be laid out until the railroad company is compensated for the additional burden it will thus have to bear,—nor can the village or city, by ordinance, require the speed of trains to be checked, where compensation for the attendant loss has not been first provided for. This has never been supposed to be the law here, nor, so far as we know, has it been held to be

the law elsewhere. Statutes and ordinances requiring the
checking of the speed of trains, the ringing of bells and the
sounding of whistles before crossing highways or streets, or
within the limits of cities and villages, have been held reasonable police regulations, without regard to whether the streets
or highways were laid out, or the village or city was platted
and has been built up since or before the granting of the
railroad charter, and without regard to whether compensation
has been made to the railroad company for loss or injury
thus sustained. Among other cases, see *G. and C. U. R. R.
Co.* v. *Loomis,* 13 Ill. 548; *G. and C. U. R. R. Co.* v. *Dill,*
22 id. 264; *G. and C. U. R. R. Co.* v. *Appleby,* 28 id. 283;
*Ohio and Mississippi R. R. Co.* v. *McClelland,* 25 id. 140;
*Chicago, Burlington and Quincy R. R. Co.* v. *Haggerty,* 67 id.
113; and, also, Cooley's Const. Lim. (4th ed.) 718, *et seq.*

There being no contract, express or implied, giving the
elder company priority of mere locomotion, the right of each
in this regard is to be enjoyed with reference to the equal
rights of all others; and this, it is to be presumed, was intended when the charter was granted appellant. It took its
charter subject to the rights of other railroads thereafter to
be chartered and built to cross its track, upon making compensation for injury to its property,—that is, its soil and
track, and other improvements annexed to the soil, if there
are such,—with the equal rights of moving trains upon their
tracks that appellant has upon its track, neither having
priority of right in that regard. And this view has the sanction of *Massachusetts Central R. R. Co.* v. *Boston, Clinton
and Fitchburg R. R. Co.* 121 Mass. 124; *Old Colony and Fall
River R. R. Co.* v. *County of Plymouth,* 14 Gray, 155; *Railway* v. *Railway,* 30 Ohio St. 604

For so much of the right of way and track as is taken or
appropriated to use, and for damages, if any are sustained,
to right of way and track and fixtures, no one denies the
right of recovery. I think, where the crossing necessitates

the raising or lowering of the grade in order to the operation of the road as efficiently as it was before operated, the expenses of so doing may properly be taxed against the road seeking the condemnation. The prior company built its road with reference to the condition of things as they then were. In the absence of notice it could not be anticipated a crossing would be at a particular place, and so the company was not required to build its track with reference to such crossing. The party seeking condemnation selects the particular crossing, and thereby renders necessary the expenditure of money to adapt the track to that crossing, and should pay whatever may be required for that purpose. Crossings may be selected (as in *Lake Shore and Michigan Southern Ry. Co.. et al.* v. *Chicago and Western Indiana R. R. Co.* 100 Ill. 21,) at places where to allow them is to practically destroy switches, sidings, turnouts, etc. In such cases, I concede, the company condemning must pay all damage thereby occasioned to the tangible property in its connection with and relation to the road of which it is a part; but in such case I do not think there should be any damages allowed for mere stoppages to give priority to other trains, or to comply with statutory requirements. If the switch or siding can not be operated efficiently with a crossing over it, it should be removed elsewhere, and the condemning road taxed with the damages thereby occasioned. If it can be so operated, but only after incurring additional expense, the condemning road should be taxed with that expense.

Mr. JUSTICE WALKER: I concur in the views expressed in this separate opinion of my brother SCHOLFIELD.