The Chicago, Milwaukee and St. Paul Railway Company, Appllee, *vs.* F. C. Batchelder, Receiver, Appellant..

*Opinion filed December 17, 1912—Rehearing denied Feb. 5, 1913.*

1. Contracts—*when contract to indemnify a railroad company does not extend to interlocking system.* A contract entered into in 1885, by which one railroad company agreed, in consideration of crossing the tracks of another, to indemnify the latter company and its licensees from all liability or expense growing out of the construction or use of the crossing, or the movement of trains over it, that might arise in consequence of any want of care by itself or its servants, does not extend to an interlocking system constructed several years later, under another contract.

2. Same—*when one railroad is liable to another for negligence of servant operating an interlocking system.* Where one railroad company, for a consideration satisfactory to itself, voluntarily assumes the duty of constructing, maintaining and operating an interlocking system, the law casts upon it the duty of using ordinary care to maintain the crossing in safe condition and operate trains with due regard to the safety of persons and property, and while it is not an insurer against damage to other railroad companies using the crossing under the contract, it is liable to them for damages from derailments due to the negligence of its servant in operating the interlocking system.

Appeal from the Branch "B" Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. Mancha Bruggemeyer, Judge, presiding.

Jesse B. Barton, for appellant.

O. W. Dynes, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

This is a case of the fourth class, brought in the municipal court of Chicago by the Chicago, Milwaukee and St. Paul Railway Company, appellee, against the Chicago Terminal Transfer Railroad Company and John N. Faithorn, its receiver. There was a trial before the court without a jury, resulting in a finding and judgment in favor of appellee for $300. The Appellate Court for the First District affirmed the judgment and granted a certificate of importance and an appeal to this court.

The claim of the plaintiff was, that on December 10, 1907, and September 27, 1908, its trains were derailed at or near the Twelfth street interlocking device at the crossing of the Pan Handle road, in Chicago, through the negligence of the defendant and its servants, by which the plaintiff suffered damages. The material facts are as follows: In 1885 the Chicago and Great Western Railroad Company contemplated constructing a railway across the rights of way and double tracks of the Chicago and Northwestern Railway Company and the Pan Handle Railway Company, and to accomplish its purpose entered into a contract with them by which it agreed to put in the crossings and the equipment therefor, to maintain and keep in good repair the same, to maintain day and night watchmen, and to indemnify the companies from all liability, cost or expense growing out of the construction or use of the crossings, or the movement of trains over them, that

might arise in consequence of any want of care of itself or its agents. The plaintiff had acquired the right to run its trains over the Pan Handle tracks to the stock yards. In 1892 the Chicago and Northern Pacific Railway Company had become the owner of the railway of the Great Western, and had entered into a contract with the Northwestern and Pan Handle companies by which crossings were to be re-located and additional crossings put in, and the provisions of the previous contract were to apply in all respects to the additional and re-located crossings. The Northern Pacific Company also agreed that if a system of interlocking and derailing switches and signals should be required by law or ordinance or by either of the other companies, it would at its sole cost and expense construct the same and connect all existing tracks, and any tracks subsequently laid at the crossings, therewith, and that it would keep said interlocking and derailing system in repair and maintain and renew the same when necessary and pay all the cost of operating the same. The men employed in the operation of the system were to be subject to discharge upon demand of the proper officers of either of the other companies, and the place of any man so discharged was to be immediately supplied by a competent man. The defendant the Chicago Terminal Transfer Railroad Company succeeded the Northern Pacific Company, and John N. Faithorn was the receiver at the time of the institution of the suit. The interlocking system was installed with a tower and other appliances for its operation, and the Terminal Company, as successor of the Northern Pacific, assumed the burden of maintaining the system and providing towermen. The derailments causing the damage were due to negligence of the employee of the receiver operating the system from the tower.

At the trial the receiver presented to the court propositions of law embodying the propositions hereafter stated, and they were refused. The first of these propositions is,

that the agreement contained in the contract of 1885 to indemnify the Pan Handle, and the appellee as its licensee, does not extend to the interlocking system constructed under the contract of 1892; and the second is, that any agreement, either expressed in the contract of 1885 or implied therefrom, was not binding upon the appellant as receiver of the successor in title to the Great Western Railroad Company, because there is neither privity of estate nor of contract between the parties. We agree to the first proposition, and this disposes of the second. If the contract of 1885 did not impose any obligation concerning the interlocking system it would not be binding on the appellant, regardless of any other question. That contract was made when the law required an engineer or other person in charge of a locomotive railroad engine to stop his engine within eight hundred feet of a railroad crossing and ascertain whether the way was clear. The agreement did not contemplate an interlocking system, with signals, not connected with the crossings themselves, and which was, so far as appears, then unknown, and as the duty of exercising care for the safety of trains was cast by law upon the engineers in charge of them, the agreement to indemnify the other companies for loss or damage growing out of the construction or use of the crossings related only to the construction and maintenance of the crossings and their protection.

The third proposition is stated by counsel as follows: "Neither the Chicago and Great Western, the Chicago and Northern Pacific, the Chicago Terminal, nor appellant, under any of the contracts in evidence, nor under any implied contract, was an insurer against the negligence of the operators of the interlocking plant." This proposition is correct so far as the question of insurance against loss or damage is concerned. The Northern Pacific did not undertake by the contract to secure absolute safety and freedom from injury in the operation of the interlocking device.

Where there is such an obligation no question of negligence arises, because the insurer has agreed to produce a definite result. The contract, however, did create a duty on the part of the Northern Pacific by its assumption of the maintenance and operation of the interlocking device. Many duties the disregard of which create liabilities are implied by the law although assumed by contract, as in the case of warehousemen, carriers and bailees. In the absence of an agreement the several railroad companies crossing the tracks of each other would have mutual duties and obligations under the law. The law would cast upon the several companies the duty of using ordinary care to maintain the crossings in safe condition, and to operate their trains in accordance with the law and with due regard to the safety of persons and property. One party would be as much interested in the maintenance of the crossings in a suitable condition as either of the others. (*Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* 105 Ill. 388.) By the contract of 1892 the Northern Pacific assumed the duty of constructing, maintaining and operating the interlocking device. No contractual relation was necessary to raise a legal obligation, but in the absence of a contract the obligation would rest upon all the companies. By the contract the Northern Pacific assumed the discharge of the duty imposed by law, and was liable for a breach of that duty through the negligence of the towerman operating the device. The position of counsel for the appellant is, that each company had a pecuniary interest in installing the interlocking device; that all joined in the contract, and from the very nature of things one of the companies had to be selected as the one which would have exclusive superintendence and control of the system, and that being so, the Northern Pacific and its successors and the receiver were only bound to exercise ordinary care in the selection of men to operate the system, and did not become liable for the negligence of

the towerman, who had been selected with due care. That rule might apply under different facts, but in this case the Northern Pacific voluntarily assumed the duty for a consideration satisfactory to that company, and we do not think that the duty was limited, as claimed.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*