# PEORIA & ROCK ISLAND RAILWAY CO.

*v.*

## JOHN BIRKETT.

1. RIGHT OF WAY—*damages*—*conflict of evidence.* Where the land sought to be taken by a railroad company for right of way, situate in the limits of the city of Peoria, was over ten acres, and twenty-five witnesses sworn estimated the damages to the land owner at various sums, ranging from $1,800 to $18,000, and the jury assessed the damages at $5,500: *Held,* that the damages were not excessive.

2. SAME—*finding as to fencing.* On a proceeding to condemn land for right of way by a railroad company, the jury, in their verdict, found the value of the land taken at $3,000, and the damages, aside from the value of the land taken, to the land owner, over and above the benefits, at $2,500, making in all $5,500. It was objected that the verdict was defective in making no reference to the fencing, and keeping the same in repair. It was held that as there was no proof as to the fencing, the jury could not find a verdict as to its cost.

3. While it is true that, in a proceeding to assess damages for a right of way for a railroad company, the cost of erecting and maintaining fences

along the line of the proposed road, is proper to be considered by the jury as an element of damages, yet when no proof is offered on the subject, the jury will not be required to find in their verdict any thing in respect to it.

4. Same—*of the fee simple title.* Where a proceeding was commenced to condemn land by a railroad company previous to the adoption of the present constitution, under a charter which gave the land appropriated in fee simple to the company, but the assessment of damages was had after the adoption of the present constitution, it was held that the rights of the parties were to be decided under the charter, and that an instruction, telling the jury that the company acquired no title to the land, and that they should consider such fact in assessing damages, was properly refused.

5. Same—*future damages from changes.* A railroad company condemning land for its right of way must construct its road as indicated by its maps and plans introduced upon the trial of the question of damages. A subsequent alteration will give the land owner a right to recover for damages resulting therefrom.

6. Same—*instruction.* On an assessment of damages for right of way, where there was a great difference in the estimates of the witnesses, the court was asked to instruct the jury, 1st, that they had no right to take an average of the testimony, and then told them they had no right to set down and add up the amounts sworn to by each witness, and then divide by the number of the witnesses, which was refused: *Held,* that the latter part of the instruction might properly have been given if asked alone, but taken with the first clause, was properly refused as erroneous, and calculated to mislead.

7. Jury—*estimating damages.* A jury may always take an average of testimony, if properly done, by a consideration of all the elements and circumstances which are referred to in the law as proper to aid in determining the weight of evidence; and they should never be told that they have or have not the right to average the testimony, without explanation.

8. Same. A jury, in assessing damages for right of way, have no right to take the gross amount as sworn to, and divide it by the number of the witnesses to obtain the result of their verdict, unless there is afterward full and free consultation, and their judgment assents to it, uninfluenced by any previous agreement.

Appeal from the Circuit Court of Mason County; the Hon. Charles Turner, Judge, presiding.

This was a proceeding to condemn lands, brought by appellant in Peoria County, and removed, by change of venue, to Mason County. The jury returned the following verdict:

"We, the jury, find that the value of the plaintiff's land, taken by the defendant, is three thousand dollars. We also find that the damages, aside from the value of the land taken, which the plaintiff has sustained, and will sustain by the taking of the said land, over and above the benefits which will accrue, or have accrued, to him, from the construction and operation of the said railroad, is two thousand five hundred dollars. We, therefore, find for the plaintiff, as the value of his land taken and damages over and above benefits, the sum of five thousand and five hundred dollars."

Messrs. INGERSOLL & McCUNE, for the appellant.

Mr. H. GROVE, Mr. W. W. O'BRIEN, and Messrs. JOHNSON & HOPKINS, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The appellant corporation claims that the damages are excessive; that the verdict does not show who is to fence the road, and who is to make and keep in repair the crossings; and that proper instructions were refused.

From a careful reading of the evidence, we are not prepared to say that the damages are excessive. The land taken lies within the corporate limits of the city of Peoria, and in quantity is over ten acres. Twenty-five witnesses were sworn, whose estimates of the amount of damages range from eighteen hundred to eighteen thousand dollars. According to the witnesses of appellee, the verdict might have been much larger. The jury, under the circumstances, were the best judges of the value of the land; and we can not perceive that so great injustice has been done as to authorize a disturbance of the finding. The character, credibility, and consistency of the witnesses, and their opportunities of knowledge, could be better appreciated by the jury than by this court.

As to the fencing, there is no proof in the record about it. In the absence of such proof, the jury could not find a verdict

as to its cost.    The case of *St. Louis, Jacksonville & Chicago R. R. Co.* v. *Mitchell*, 47 Ill. 165, merely decides, that it is a proper element, in the condemnation of lands for railway purposes, to consider the cost of erecting and maintaining fences along the line of the road.    The authorities therein cited are to the same effect.    In that case the company offered to prove, that a contract had been made for the erection of the fence, and that the material was on the ground.    In this case no proof whatever was either given or offered in regard to the fencing; and it would be an anomaly to require the jury to find a verdict in regard to a subject-matter about which there was no evidence.

The future liability as to the construction and maintenance of the crossing, is settled by the law.    The company must construct the road as indicated by its maps and plans introduced upon the trial.    If these should be changed, the land owner could recover any damages resulting from the change.

These principles are settled by the cases of *Jacksonville & Savannah R. R. Co.* v. *Kidder*, 21 Ill. 132, and *St. L., J. & Chicago R. R. Co.* v. *Mitchell, supra.*

The court below refused to give, for the company, the following instructions:

"1st. That the railway gets no title to the land taken only the right of way, and this fact should be taken into consideration by the jury.

"2d. The jury have no right to take an average of the testimony.    They have no right to set down the amount sworn by each witness, and then divide by the number of witnesses. On the contrary, the jury should give to each witness the weight that he deserves, and then decide the case according to the weight of evidence."

We shall consider the last instruction first.

The last clause is unobjectionable ; but coupled with the other two, it was not error to refuse the instruction.    A jury have not the right to take the gross amount as sworn to by

witnesses, and then divide by the number of witnesses, and arbitrarily make the result their verdict; but they might adopt this mode of obtaining a result if there was afterward full and free consultation, and the judgment assented to it, uninfluenced by any previous agreement.

A jury may always take an average of the testimony, if properly done, by a consideration of all the elements and circumstances which are referred to in the law as proper to aid in determining the weight of evidence; and they should never be told that they have, or have not, the right to average the testimony, without explanation.

Average means, literally, to or near the truth.    In the sense in which the term is used in the instruction, it means, to reduce to a mean, to ascertain the medium between two extremes.

While the jury might properly have been instructed that they could not average the testimony in the mode mentioned in the second clause of the instruction, it would have been manifest error to have told them that they could not do it in any mode, or under any circumstances.

The instruction, as a whole, would have greatly confused and probably misled the jury.

Neither should the other instruction have been given.

The charter of the company, granted March 7, 1867, provides: that all real estate taken, condemned, or appropriated, for the right of way, shall be held by the company in fee simple.

The present constitution provides: that the fee of land taken for railroad tracks, without the consent of the owners, shall remain such owners, subject to the use for which it was taken. Art. 2, Sec. 13.

The proceedings for condemnation were commenced prior to the adoption of the constitution; and the question raised is, whether upon the facts the company will obtain the fee, or only the use of the land.

The first section of the schedule of the constitution saves all actions, prosecutions, etc., of individuals or bodies corpor-

ate, and makes them as valid as if the constitution had not been adopted.

We do not decide as to the effect of the constitution upon the \charter of the company; but are of opinion that, as the company had commenced proceedings for condemnation before the adoption of the constitution, such proceedings were continued as valid, and must be governed by the charter.

The judgment is affirmed.

<em>Judgment affirmed.</em>