# THE CHICAGO & WESTERN INDIANA RAILROAD COMPANY

## v.

## HENRY D. COGSWELL.

*Railroads—Elevation of Track—Damages—Condemnation Proceedings.*

1. In case of the condemnation of private property for railroad uses, a recovery may be had for damages caused by a change in the plan of construction, with respect to which damages were originally assessed.

2. If a railroad company desires to stipulate for any particular mode of construction or operation, and have an assessment of damages limited to such mode, it has a right to do so.

3. If damages in a given case were assessed for everything which it was reasonably probable would ensue from the taking and use of certain land for railroad purposes, there can be no additional damage from the use, for the same purpose, of the same land.

4. In the case presented, this court holds that the damages originally assessed were assessed with a view to the existence of a surface road only, but that additional conpensation could not be recovered upon the ground of the elevation of defendant's tracks.

5. If the subsequent elevation resulted in the throwing of more smoke, cinders and dust upon the premises of plaintiff than was the case when the road was upon the surface, and additional damage resulted, a recovery could be had therefor.

6. The constitution and laws of this State, so far as compensation is concerned, place the taking and use of property for public purposes on the condition that exists with reference to private use. The owner of property taken or held for public purposes, if he devotes his property to any use which would be a nuisance, or would be actionable if done by a private citizen, may be made to pay just compensation for the damages done to the property of others by such use; but the liability of the owner of property devoted to public uses is no greater than is that of the owner of property held for private purposes; the right of one to use without being liable for damage is the equal of the other.

7. To warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property, in excess of that sustained by the public generally.

8.   What is a reasonable use of one's property, to which every person is entitled, depends upon the circumstances in each case.

[Opinion filed May 16, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Messrs. OSBORN & LYNDE, for appellant.

The plaintiff's property was not damaged within the meaning of the constitution and laws of this State, even if depreciated in value because of the elevation of the defendant's tracks upon its own right of way. We wish here to consider the question as to whether the fact alone that the value of property is depreciated by reason of the elevation of railroad tracks upon the railroad's right of way presents a case of property damaged for public use within the meaning of the constitution and laws of this State, so that upon offering evidence to show simply a depreciation in the value of his property, the owner can recover the amount of such depreciation from the railroad company. In other words, does the constitutional provision that "private property shall not be   *   *   *   damaged for public use without just compensation," make a railroad company liable to the owner of property, if in fact his property depreciates in value solely because of the construction of the railroad in its vicinity, and wholly without reference to any wrongful act of the railroad company, infringing upon or in violation of any property right?

We single out this question in this case, for the reason that on this record it is evident that the special matters which are set up in the declaration as wrongful and as foundation for the recovery sought, do not in fact furnish any basis for this action. The plaintiff can not, we maintain, recover here, because of any possible effect of the elevation of these tracks upon the extension of streets to the west of his property, nor because of its effect upon possible switch connections with defendant's railroad; and the judg-

ment in the condemnation suit is a complete defense to any claim for recovery on account of the throwing of smoke, cinders, etc., upon his property in the operation of the defendant's railroad. The plaintiff's case, therefore, is left dependent solely upon the claim that the general effect of the elevation of the defendant's tracks and the construction of this embankment and trestle work upon its right of way has been to depreciate the value of his adjoining property; so that we have the question fairly presented, whether or not the fact that the value of this property may have been depreciated by reason of the presence of this elevated structure alongside of it, constitutes a damage to the property within the meaning of the constitution. This question is one of importance in this case, because the plaintiff has evidently proceeded on the theory that he can recover under the constitutional provision; and the measure of damages which he sought to establish, and the evidence which he offered on the question of damages, was based on the theory that the defendant was liable, no matter whether the alleged depreciation in the value of the property was due to some interference with or infringement upon the plaintiff's property, or some property right enjoyed by him in connection therewith, or not.

The meaning of this constitutional provision has been so clearly stated by our Supreme Court that there can be but one answer to this question.

In the case of Rigney v. The City of Chicago, 102 Ill. 64, the Supreme Court was called upon to define with precision the cases to which this provision was applicable, and to review the former decisions touching the question. The opinion, by Judge Mackey, is very able and exhaustive, and conclusively disposes of any doubt as to the meaning of this provision.

On page 80, the court says, by way of summary:

" The question then recurs, what additional class of cases did the framers of the new constitution intend to provide for, which are not embraced in the old? While it is clear that the present constitution was intended to afford redress

in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities, which directly impair the value of private property, for which the law does not, and never has, afforded any relief. For instance, the building of a jail, police station or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of *damnum absque injuria.* So as to an obstruction in a public street; if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law."

We wish also to quote from the charge given to the jury by Judge Dyer in the case of The Lehigh Valley Coal Company v. The City of Chicago, 26 Fed. Rep. 415. The action was brought against the city for damages to property, resulting from the construction of a viaduct in the city of Chicago, and the court's definition of the nature and extent of the right of action is clear and precise.

" It is the law of this State that when the construction of a public improvement like that in question here has caused some direct physical disturbance of a right which a party enjoys in connection with his property, and which gives to

it an additional value, and that by reason of such disturb-
ance he has sustained a special damage with respect to his
property in excess of that sustained by the public generally,
he has a right of action to recover damages for the injury
thus sustained."

And Lewis on Eminent Domain, Sec. 236, says on the
same point: "Unless the owner is disturbed in the enjoy-
ment of some right which he is entitled to make use of in
connection with his property, he can not recover. If the
loss or depreciation arises from the proximity of the work or
improvement, as from its unsightly nature, or its incongru-
ity with the uses to which the neighboring property is put,
there can be no recovery."

The answer, therefore, to this question, must be, that the
plaintiff can only recover when there has been some direct,
physical disturbance of some property right enjoyed by
him in connection with his property; and that the sole fact
that the value of his property has been depreciated by
reason of the construction of a railroad in its vicinity, or by
the elevation of its tracks upon its right of way adjoining
his property, will not be sufficient foundation for an action.
His property is not "damaged" within the meaning of the
constitution.

Mr. R. S. THOMPSON, for appellee.

Boyd v. Negley, 53 Penna. State, 387, was a bill in equity
to restrain the construction of a road different from plan
upon which damages were awarded. The court held that
"when a petitioner adopts a grade before the damages are
assessed, and marks the grade adopted upon grade pins
along the route, it would be inequitable to permit him to
change it after the assessment, and adopt another more
injurious to the land. In such a case the jury ought to be
presumed to have assessed such damages as would be caused
by the construction of a road with the grade marked and
with the filling and embankments indicated. If, therefore,
it clearly appear that the jury had been informed that the
petitioner intended to construct the road with another grade

less hurtful to the owner of the land than the one which he finally adopted, a court of equity should doubtless interfere." Carpenter v. Eastern & Amboy R. R. Co., 24 N. J. Eq. 249.

Commissioners were called to assess the damages for railroad right of way across a farm; the right of way intersected the farm so as to cut off the buildings, springs, etc., from the greater portion of the farm. By reason of the formation of the surrounding country, it was necessary that the railroad should pass over a portion of the farm at an elevation of 120 feet. The commissioners, relying upon statements of agents of the road that they would pass over the farm by iron bridge, supported by abutments, assessed the damages upon that basis, which the property owner accepted, and gave a release to the company. Afterward the road changed its plans and concluded to pass over the farm by a "fill" instead of a bridge; complainant filed bill to restrain them until the additional damage, caused by the change in construction and cutting off access, had been awarded him. The Supreme Court held he was entitled to the additional damage, notwithstanding the court say that the law presumes that the commissioners award damages for all injuries that might result to him.

Lancashire and Yorkshire Ry. Co. v. Evans, 15 Bevan, 322, a leading English case, was where, in 1845, Mrs. Orrell, the owner of dye works through which petitioner's road was located, agreed with the company that an arbitrator might settle the amount of compensation for the purchase of the land "and in respect of the damage which might be sustained" by reason of the making of the railroad, arbitrator awarded her £225. The railroad was opened with single line in April, 1846, and soon after, in October, Mrs. Orrell transferred her interests in the property to defendants.

July, 1847, a new act of Parliament enabled the railroad to make additions and extensions and to alter its name. In the same year, 1847, a second line of rails was laid down and the road widened. Defendants gave notice to plaintiff to select an arbitrator to fix damages for acts subsequent to

award. Plaintiff then brought bill for injunction to restrain those proceedings. In dissolving the injunction the Master of Rolls says, page 330:

" I have next to consider whether there are any equitable circumstances which make it unjust for the defendants to pursue their legal remedy under that statute. In the first place, it is said there was a contract which included not only compensation for the purchase of the land, but for all the damage which might be sustained by reason of the making of the railway. I hold that this does not mean all the damage that might, at any time afterward, by possibility, be sustained by reason of the construction and the working of the railway. * * *

" I am of the opinion that the contract means nothing more than this: We can now ascertain what damage has already been done, and what, in the ordinary working of the line, will be the sort of damage which will probably be produced. That damage is meant to be compensated by this contract; but any future extraordinary damage is not intended to be included in it." 3 Sutherland on Damages, 464, 465.

" It is conclusively presumed after judgment that it embraces all damages of every kind naturally consequent to the taking; in judgment of law all such damages were foreseen and compensated, and no others. But this does not preclude a fresh demand, if the plan of the public work is changed after the assessment so as to make the appropriation more injurious."

In Wabash, St. Louis & Pacific Ry. Co. v. McDougall, 118 Ill. 229–238, the railroad had been constructed upon solid embankment across defendant's land prior to his purchase. Subsequent to his purchase a freshet washed away part of this embankment. The railway company changed the construction of the road to an open trestle over the part washed out, by reason whereof defendant claimed his land was damaged. Condemnation proceedings were then instituted for the right of way. The court holding that the present owner was not entitled to damages caused by the construction of the road before his purchase, on page 238, say:

" But what has been said is with reference to the railroad as it was then constructed, at the time defendants purchased the land. At that time the embankment of the railroad was solid and continuous over the land, or a portion of it; but since then, and after the plaintiffs came into possession of the road, there occurred a break in the embankment, which, instead of filling up, plaintiffs left as a permanent opening for the passage of water, and put in a bridge. The evidence tends to show that this opening and bridge in the embankment have been adopted by plaintiffs as a permanent feature in the construction and maintenance of their road, and that it is a cause of additional damage to the land. For any increase of damage which results to the land from this alteration in the embankment, we think the defendants are entitled to recover, and that they may do so in this proceeding, and not be put to another action for such damage, as contended by defendant's counsel, on the ground that a proper construction and maintenance of the embankment required the break in question to be filled up. There was not a mere negligent maintenance of the embankment, but, as the evidence tended to show, an alteration in the method of the permanent construction of the embankment by the adoption of this opening in it. And no matter whether that would be a proper construction of the embankment or not, if that was the plan of construction which the railroad company had adopted, the assessment of damages in a condemnation proceeding should be upon the basis of a road thus constructed. We think it may be treated here as if the application were to have the damages assessed because of the alteration in the embankment—of this opening in it."

This same case, after a retrial, again went to the Supreme Court, and is reported as The Wabash, St. Louis & Pacific Ry. Co. v. McDougall et al., 126 Ill. 111. The court says, on page 120 : " It will be seen, by reference to the formal opinion herein, that the case on this trial is to be treated simply as a proceeding for re-assessment of damages as to the land not taken but injured, and that the measure of defendant's damages is the increased or additional injury, if

any, caused by the alteration.    In an original proceeding to condemn, the measure of damages is the difference between the value of the land as a whole, before and after the construction of the road built according to the plan proposed. Chicago & Pacific Railroad Co. v. Francis, 70 Ill. 238; Page et al. v. Chicago, Milwaukee & St. Paul Ry. Co., 70 Ill. 324; Eberhart v. Chicago, Milwaukee & St. Paul Ry. Co., 70 Ill. 347; Dupuis et al. v. Chicago & North Wisconsin Ry. Co., 115 Ill. 97; Chicago, Burlington & Northern R. R. Co. v. Bowman et al., 122 Ill. 595.    As to these lands, such damages accrued to Bennett, as heretofore decided.    If, after damages have been assessed, or settled by agreement, a change in the plan of construction, involving more damages, is made, the owner may demand a new assessment as to such increase of damages.    Mills on Eminent Domain, 219.    To the same effect is the holding in the former decision herein. The proper inquiry on this trial was, whether or not the lands in question, as a whole, were damaged more by the railroad built on its present plan, than they were as it was first-constructed, and if they were, to determine the amount of such increased damages."    Lewis, Em. Domain, Sec. 481.

"It is apparent that, where part of a tract is taken, the damages to the remainder can never be satisfactorily estimated without knowing how the works on the part taken are to be constructed.    Take the case of a railroad through a piece of property.    It may make a great difference whether it is built at the natural grade or in a deep cut or on a high embankment or trestle.    If the works have actually been constructed before the damages are assessed, it has been held proper to take into consideration the actual condition of the works as affecting the damages."

In this same section, and the note referring thereto, may be found quotations from several cases to the effect that where the plan of the road has been changed, causing additional damage, a recovery may be had for such damages. McCormick v. Kansas City R. R. Co., 57 Mo. 433.

Defendant's railroad was constructed upon an embankment, which caused water to accumulate upon the east side in

large quantities; plaintiff's land, which was upon the west side of the road, had been condemned for the right of way. Defendant cut a culvert in the embankment, by which the accumulated water was drained upon plaintiff's land.

Held, that he was permitted to recover, and that the condemnation and payment of damages assessed was no bar, as the commissioners could not anticipate any such action of the railroad.

The declaration in this case does not confine the cause of injury simply to ashes, cinders, smoke, etc., nor does it seek to recover any damages caused by the construction of the surface road. The declaration expressly alleges that "prior to the committing of the grievances hereinafter mentioned," the Western Indiana Belt Railway Company had constructed its railroad tracks on the right of way west and adjoining said premises, on the surface of the ground, crossing Madison street at grade, etc., and that "for years prior to the committing of the grievances hereinafter mentioned," said railroad was maintained and operated by said Chicago and Western Indiana Belt Railway Company and its successor, the defendant. This negatives any idea that the declaration contemplates the recovery of any damages prior to the erection of this elevated structure. The damage claimed is the depreciation in value caused by the erection of the structure described and the operation of locomotives and trains on said structure, and the evidence introduced was confined to the depreciation in the market value of the remaining nine acres, between the value with the road constructed and in operation as a surface road, and its value with the road operated on the viaduct as constructed, the same being confined to the time when the viaduct was constructed and put in operation.

Waterman, P. J. In 1880, appellee was the owner of a ten-acre tract of land in the town of Cicero, Cook county, Illinois, which was bounded on the north by Madison street, on the south by the center line of Jackson street, extended, and on the west by what would have been the center line

of West 46th street, if West 46th street had been extended south of Madison street.

Appellee's land, including streets, was 333 feet east and west, by 1,320 feet north and south. Appellant, being a railroad company, had, under an ordinance of the town of Cicero granting it the right so to do, constructed and was operating a surface railroad, which ran north and south, immediately west of and adjoining the west line of appellee's land. While thus operating said railroad, and while, under the ordinances of the town of Cicero, said railroad was permitted to cross Madison street—keeping and maintaining all street crossings in good condition, and so that the same might be easily crossed in all directions without danger to persons or property, the railroad company condemned the west thirty-three feet (or one acre) of appellee's land for the purpose of its right of way, thus making its right of way sixty-six feet wide. At the time of the trial of the condemnation case in 1884 a jury was waived, and the judge viewed the premises; the surface road was there and in operation at that time; the finding awarded the value of one acre, and declared the remaining nine acres would not be damaged; judgment was entered on the finding, the money was paid, and the appellant went into possession. In 1885, the appellant procured a new ordinance granting it the right to erect a viaduct over Madison street and to construct its approach thereto from the south, and it 1885 it so constructed said viaduct and approach, that the structure was about eighteen feet high at Madison street and about eight feet high at the south line of appellee's land. Appellee claims there was no authority of law at the time of the condemnation proceeding to consider the damages to the remainder by reason of an elevated structure, and that this is such a change of plans as authorizes, under the law, the recovery of such additional damages as the evidence shows was caused by such change.

The questions presented in this record, briefly stated, are: Where, in condemnation proceedings instituted by a railroad, the damage to property not taken has once been judicially

ascertained, and thereafter the grade of the road opposite such property is raised from eight to seventeen feet, and thereby the value of the property is lessened, is the owner of such property entitled to additional compensation, without which the statute provides that private property shall not be taken for public use?

That a recovery may be had for damages caused by a change in the plan of construction with respect to which damages were originally assessed, is established both upon principle and authority. The reason is obvious. The property owner is entitled, in the absence of anything showing how the road is to be constructed or used, to such damages as it is reasonably probable will ensue from the construction and operation of the road. C., B. & N. R. R. Co. v. Bowman, 122 Ill. 595.

If the road desires to stipulate for any particular mode of construction or operation, and have an assessment of damages limited to such mode, it has a right to do so. C. & A. R. R. Co. v. J. L. & A. Ry. Co., 105 Ill. 388; Jacksonville & Savanna R. R. Co. v. Kidder, 21 Ill. 131; Hayes v. Ottawa, Oswego & Fox River Valley R. R. Co., 54 Ill. 373.

Manifestly, then, damages having been assessed upon the basis of a certain plan of construction, if a change is made to another mode the property owner is entitled to such additional damages, if any, as arise from a manner of construction concerning which there has been no assessment or payment of damages. Wabash, St. Louis & Pacific Ry. v. McDougall, 118 Ill. 229–238; same v. same, 126 Ill. 111–120; C. & A. R. R. Co. v. J. L. & A. Ry. Co., 105 Ill. 388; Peoria & C. Rock Island Ry. Co. v. Birkett, 62 Ill. 332.

It follows, therefore, that damages done to land, not taken, having once been assessed, when additional damages are claimed upon the allegation that the assessment which has been had was upon the basis of a special mode of construction or operation which has since been departed from, the first question for determination is, to what especial kind of construction or operation were the damages in the first litigation had? In other words, what are the sources from which

the damages, once awarded, sprang? If in the former pro-
ceeding there was no restriction whatever, if damages were
then assessed for everything which it was reasonably probable
would ensue from the taking and use of certain land for
railroad purposes, then there can be no additional damage
from the use, for the same purpose, of the same land.

It does not appear that in the former proceeding any par-
ticular mode of construction was stipulated for, or that any
special plan was submitted; but it is shown that the judge
before whom the cause was tried, a jury having been
waived, inspected the premises and saw that the road was
then constructed and passed the premises now under con-
sideration, at about the natural surface of the ground.
Were, then, the damages in the former proceeding assessed
with a view to the existence of a surface road only?

In St. Louis, Jacksonville & Chicago Ry. Co. v. Mitchell,
47 Ill. 165, it was held in a proceeding to obtain the right
of way across certain lands for the purpose of reducing the
damages, evidence should have been admitted to show that the
company had contracted for the building of a fence through
the land and had provided the lumber therefor. It would
seem from this that if the jury had visited the premises and
found a fence already constructed by the company, they
would have been bound to take such fact into consideration
in arriving at their verdict.

In Carpenter v. Eastern & Amboy R. R. Co., 24 N. J. Eq.,
it appeared that the commissioners to assess damages from
the taking and use of a right of way for a railroad, proposed
to be located through a farm, were informed by agents of
the company that the road would pass over the farm by an
iron bridge, supported by abutments, and assessed damages,
and a settlement was made upon that understanding. The
road having changed its intention and concluded to cross
the farm by a "fill," the court upon this state of facts held
that the owner was entitled to recover such increased com-
pensation as was equal to the increased damage. In Boyd v.
Negley, 53 Penn. St. 387, it is said that when a petitioner
adopts a grade before the damages are assessed, and marks

the grade by grade pins along the route, these having been seen by the jury, it must be presumed to have assessed such damages as would be caused by the construction of a road with the grade marked, and with the filling or embankments indicated. It is questionable whether, in view of the proximity of Madison street, which the road crossed, appellant had at the time of the former proceedings any such authority from the town of Cicero, in which these lands were, as would have enabled it to have passed the premises of appellee upon any grade save one nearly that of the natural surface. The ordinance authorizing the construction of a viaduct seems to have been passed September 26, 1885; the judgment in the former proceeding was entered May 31, 1884. We are, for these reasons, of the opinion that damages must be presumed to have been in the former proceeding assessed upon the basis of a road passing the premises of appellee at about the natural surface grade. The change of construction that has been made since the former proceeding, is that the road passing and near to the premises of appellee, has been raised, an enbankment having been constructed, varying in height from eight to seventeen feet; this embankment has been constructed and the road runs upon land which the company own in fee.

What are the elements that may be considered in ascertaining the sum, if any, which appellant is entitled to recover because of the building of this embankment and the running of trains thereon?

Any real property may be damaged or benefited by what is done upon property adjacent to or in the vicinity. As the owner can not be called upon to pay private individuals or corporations for the benefit which may come to his property from the construction by them of manufactories or fine dwellings in the vicinity of his premises, so there are certain depreciations in the value of his lands, for which, arising as they may from things which every owner of property had a right to do, he can not claim compensation. If an unsightly structure be erected or suffered to remain in a beautiful residence neighborhood, its tendency is to depreciate the value

of surrounding property, but it is not a damage for which a recovery can be had. So to a beautiful view; the prospect which one has from his windows, adds to the value of his home, and positive damage is done when his neighbor, by the rearing of a lofty structure, shuts out all sight of the pleasant landscape; but the law affords for such damage no redress. The maxim, "*sic utere tuo ut alienum non laedas*," in its practical application, means only that one in the use of his own property must not infringe upon the lawful rights of others.

Had the strip of land to the west of appellee's premises, upon which this railroad runs, been owned by a private citizen, he might have built thereon an embankment or a wall seventeen or forty feet high, without rendering himself liable to appellee for the loss of view he had thus caused, or the difficulties he had thrown in the way of the opening of streets running through and west of the premises of appellee. So, too, such private owner, in an uninhabited neighborhood, such as this was, might have built upon his premises a saw-mill, an ice-house, cattle sheds or other structures, undesirable in a fine residence neighborhood, but whose erection would have been a lawful use, and one of which appellee could not have successfully complained in a court of justice. Buildings and works of this class might have been entirely inconsistent with the use to which appellee designed to put his property; they might have rendered his property less or more valuable than it otherwise would have been—might practically have put money in or taken it from his pocket; yet he would not in either case have been called upon to pay, or been entitled to receive compensation.

We understand that the constitution and laws of this State, so far as compensation is concerned, place the taking and use of property for public purposes on the condition that exists with respect to private use. The owner of property taken or held for public purposes, if he devotes his property to any use which would be a nuisance, or would be actionable if done by a private citizen, may be made to pay just compensation for the damage done to the property

of others by such use; but the liability of the owner of property devoted to public uses is no greater than is that of the owner of property held for private purposes; the right of one to use without being liable for damage is the equal of the other.

In Rigney v. The City of Chicago, 102 Ill. 64–80, the court says : " There are certain injuries which are necessarily incident to the ownership of property in towns or cities, that directly impair the value of private property, for which the law does not and never has afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property; yet that is clearly a case of *damnum absque injuria.*" And further in the same case the court said : " In all cases, to warrant a recovery, it must appear there has been some direct, physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally." To the same effect are the cases of City of Chicago v. Union Bldg. Association, 102 Ill. 379–394; City of Olney v. Wharf, 115 Ill. 519; Hall v. Mayor of Bristol, 2 Law Repts. C. P. C. 322; Chamberland v. West End Ry. Co., 10 E. C. L. 604.

The erection of an embankment upon the premises of appellee, no right of access or approach having been disturbed, did not, nor does the mere running of cars thereon, constitute a physical disturbance of any of appellee's rights. The court ought not, therefore, to have permitted evidence of damage, because of the erection of an embankment, to have been given to the jury. So far as appears, appellee never had any rights touching the construction of an embankment upon the premises of appellant, or to have his, appellee's, land left so that streets could be cut across it without going under a railroad track, or to have the strip of land lying west of his grounds unoccupied by undesirable structures, or such as would depreciate the value of his property.

Appellee, we presume, did have the right that dust, smoke and cinders should not be thrown upon his premises; such action upon the part, either of a private individual or the public, it is quite likely would have been a direct physical disturbance of a right which appellee had in connection with his property; for such disturbance upon the part of an individual, the law has always afforded a remedy; and in this State, since the adoption of our present constitution, providing that private property shall not be damaged for public use without just compensation, a remedy is given to the owner for such interference, whether by or for the public, or by private individuals.

Our attention has been called to the language of the Supreme Court, repeatedly used, that in cases arising under the provisions of the constitution relative to the damaging of property for public use, "the depreciation is determined by comparing its value before and after the structure is made which produces the injury." As applied to the facts of the cases in which such language was used, it was correct and applicable. Such language has not, however, so far as we are aware, been used in a case like the present, or in any instance where an attempt had been made to recover damages for the doing for public purposes, of that for which, if done for private uses, no action would have lain.

In the former proceeding damages were awarded to the owner of these premises for the taking of a strip of land thirty-three feet wide, adjacent to and west of the land now under consideration, and an adjudication was also had as to the damage which, as the owner of these premises, it was reasonably probable he would sustain from such taking, and from the construction and operation of a railroad as then proposed and indicated; that included such throwing of smoke, cinders and dust upon these premises, as it was reasonably probable would ensue from a railroad running at about the natural surface of the ground. If the subsequent elevation of the track causes any more than this quantity of cinders, etc., to be cast upon the premises of appellee, and thereby he suffers an additional damage, he is entitled to recover therefor.

C. & W. I. R. R. Co. v. Cogswell.

In saying what we have as to the throwing of dust, cinders, etc., upon the premises of appellee, we do not wish to be understood as prejudging the case at bar on another trial, as in all cases of this kind the right to recover for interference with an alleged right appurtenant to property must necessarily depend on the existence of the rights asserted. In this respect the rights as to property vary with the situation, surroundings, etc. If a person should erect a dwelling house in the immediate vicinity of a blast furnace and rolling mill, it would hardly be contended that, having seen fit to go and make his home in such a neighborhood, he would be entitled to enjoin the proprietors of the furnace from filling the air with smoke, or from disturbing the serenity of his repose by the loud and jarring noise that the carrying on of their works necessarily involved.

Every person has a right to the reasonable enjoyment of his property. What is a reasonable use of one's property must necessarily depend upon the circumstances of each case; for a use for a particular purpose and in a particular way, in one locality, might be lawful, and a nuisance in another. Barnes v. Hathorn, 54 Me. 124; Wiers' Appeal, 74 Penn. St. 230; Bamford v. Tumley, 3 B. & S. 62; Tipping v. St. Helen's Smelting Co., 4 B. & S. 608.

It is urged that the conclusion arrived at in the former proceeding, that these lands would not be damaged by the construction of this road running at about the natural surface grade, must have been upon the theory that the benefit derived from the opportunity thus afforded for switch connection from manufactories and coal yards that might be located on these lands, equaled any damage incident to its construction and operation. Appellee insists that there is no opportunity for switch connection from his premises with the road as now constructed, and that consequently his lands do not now have a benefit considered in the former proceeding.

Upon what theory the court came to the conclusion arrived at in the former proceeding we can not know. By the former judgment it was established that these lands

were not damaged by the road as it then existed. By the change of grade which has since been made, the right to have switch connections has not been taken away. No switch connections have been destroyed; the property was then and is now vacant and unoccupied. All that has been done in this regard is that the present grade may require that the manufactories, etc., hereafter located on these premises shall, in order to have useful switch connections, be constructed with reference to the present situation; such construction may be more expensive and may be more or less advantageous than one adapted to switch connection with a road running at a natural surface grade. It is not difficult to see that there may be advantages or disadvantages in having a railroad pass one's premises upon a viaduct seventeen feet high rather than upon the surface of the ground. All these things may be properly taken into consideration in this case, it being borne in mind that a recovery can be had only for such damages, if any, as are in addition to any that arose from the road when running at about the natural surface; and that damages can only be awarded for a direct physical disturbance of a right which the property owner has in respect to his property, a right which exists in respect to the use, for private as well as public purposes, of other property.

The judgment of the Circuit Court will be reversed and the cause remanded.             *Reversed and remanded.*