### City of San Antonio v. D. Sullivan.

Decided May 2, 1900.

1. **Condemnation of Land by City for Streets—Assessment of Damages—Charge.**

Where a city ordinance authorized condemnation of land for a straight street through plaintiff's property, and after assessment of the damages the order was changed, calling for a crooked and indirect route for which the former damages were inadequate, the presumption will obtain that the commissioners, in awarding the damages, followed the rule given in articles 4459 and 4461, Revised Statutes, governing condemnation by railway companies, and that in arriving at the damages, they must have considered the benefits arising from a straight thoroughfare from the land to the city,—it being provided by special act that the city should have authority to condemn land in the same manner as railway companies.

2. **Same—Injunction the Remedy.**

Where, after the assessment of damages under a city ordinance calling for a straight street, and after the time for an appeal from the award had expired, the ordinance was so changed as to call for a crooked street, rendering the damages assessed greatly inadequate, the city was without authority to take possession of the land, and an injunction would lie to restrain it from doing so.

Appeal from Bexar. Tried below before Hon. J. L. Camp.

*George C. Altgelt,* for appellant.

*Ogden & Terrell,* for appellee.

Fly, Associate Justice.—This is a suit to enjoin appellant from opening a street through the land of appellee, which land had been condemned to public use by proceedings in the County Court. A perpetual injunction was awarded. It was alleged in the petition that appellee

was the owner of lot No. 9, in district 2, in the city of San Antonio, containing 20½ acres of land, bounded on the north by Brackenridge Avenue; that on August 7, 1899, the city council of San Antonio passed the following ordinance:

"Be it ordained by the city council of the city of San Antonio: Section 1. That the city attorney be instructed to institute proceedings in the County Court of Bexar County for the opening of North Pine Street, and for the condemnation of the following described property owned by D. Sullivan, that is to say: All that certain tract or parcel of land lying and being in the State of Texas, county of Bexar, in the city of San Antonio, and being part of original city lot number nine (9), range number one (1), district number two (2), on the east side of the San Antonio River, and described as follows, to wit: beginning at a stake set in the south line of Brackenridge Ave., 37 86/1000 feet east and 40 feet south of the center monument at the intersection of N. Pine Street and Brackenridge Ave.; thence south 235 6/10 feet to a stake set in the south line of said original lot No. 9; thence west with the said south boundary line of lot No. nine, 55 6/10 feet; thence north 235 6/10 feet to the south line of Brackenridge Ave.; thence east along the said south line of Brackenridge Ave. 55 6/10 feet to the place of beginning—containing 30/100 acres.

"Also the following described property owned by C. H. Cunningham, and being all that certain tract or parcel of land lying and being in the State of Texas, county of Bexar, in the city of San Antonio, on the east side of the San Antonio River, and being parts of original city lots numbers seven (7) and eight (8), range number one (1), district number two (2), described as follows, to wit: Beginning at a stake set in the north boundary line of said lot No. eight, 275 6/10 feet south and 37 86/100 feet east of the center monument at the intersection of N. Pine Street and Brackenridge Ave.; thence south 551 2/10 feet to a stake set in south boundary line of original lot No. 7; thence west along said south boundary line of lot number seven, 55 6/10 feet; thence north 551 2/10 feet to a stake set in north boundary line of said lot No. 8; thence east along the last mentioned north line 55 6/10 feet to the place of begining—containing 70/100 acres.

"Also the following described tract of land owned by E. H. Cunningham, being all that certain tract or parcel of land lying and being in the State of Texas, county of Bexar, in the city of San Antonio, on the east side of the San Antonio River, and being parts of original city lots numbers four (4), five (5), and six (6), range number one (1), district number two (2), and described as follows to wit: Beginning at a stake set in the north boundary line of original lot No. six, 826 8/10 feet south and 37 86/100 feet east of the center monument at the intersection of North Pine Street and Brackenridge Avenue; thence south 826 8/10 feet to a stake set in the south boundary line of original lot No. 4; thence west along the said south boundary line of lot No. four, 55 6/10 feet; thence north 826 8/10 feet to a stake set in said north

line of original lot No. 6; thence east along last mentioned north boundary line 55 6/10 to the place of beginning—containing 1 5/1000 acres."

It was further alleged that under the terms of the ordinance the street would have been run through the property of E. H. Cunningham, C. H. Cunningham, and appellee, and would have been a straight thoroughfare from the point of beginning on Brackenridge Avenue to the south line of land owned by E. H. Cunningham; that under said ordinance condemnation proceedings were instituted against appellee, and the appraisers awarded the sum of $103 as damages. No exceptions were filed to the award by appellee, because, as alleged, appellee was willing to accept that sum if the street was laid out as set forth in the ordinance; but afterwards appellant, through its council, rescinded that portion of the ordinance that caused the street to pass across the land of E. H. Cunningham, which caused the street to be a crooked and winding lane instead of a straight street through to Brackenridge Avenue, and that the award was made in view of the benefits that would result to appellee by such direct thoroughfare, and that since such change the amount awarded was totally inadequate to remunerate appellee for his damages. It was further alleged that it was never intended by the council to open the street through the land of E. H. Cunningham, and that the ordinance was passed to mislead appellee and induce him not to contest the award made.

Appellant answered by general demurrer, and by special exception on the ground that it appeared from the petition that appellee had a legal remedy by appeal from the judgment of the court condemning his property, which he neglected to pursue, and fails to allege any good reason for not pursuing his legal remedy.

By an amendment to the charter of the city of San Antonio (Special Laws 1895, page 72), authority is given the city to proceed in the same manner as railway companies do in the condemnation of private property, and this mode was pursued by the city in the condemnation proceedings in this suit. The rules laid down for the assessment of damages in condemnation proceedings by railway companies must, therefore, be looked to in ascertaining the rules applicable to this case. In article 4459, Revised Statutes, it is provided that the "commissioners shall hear evidence as to the value of the property sought to be condemned, and as to the damages which will be sustained by the owner thereof by reason of such condemnation, and as to the benefits that will result to the remainder of such property belonging to such owner, if any, by the construction of such railroad, and shall according to this rule assess the actual damage that will accrue to such owner by said condemnation." Again, in article 461, it is provided: "When only a portion of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner as to the remaining portion of such real estate; whether such remaining portion is increased or diminished in value by such con-

demnation, and the extent of such increase or diminution, and shall assess the damages accordingly."

The presumption will prevail that the commissioners appointed to assess the damages to appellee followed the above rules in arriving at the damages incurred, and in arriving at the damages must have considered the benefits arising from having a straight thoroughfare from the land to the city.

After the assessment of damages had been made on the basis of a street straight through, a change in the ordinance was made by which the contemplated street was abandoned after reaching the land of E. H. Cunningham, and instead of the straight thoroughfare contemplated in the condemnation proceedings, a crooked and indirect route is sought to be made. This change in the street was made after the time for an appeal from the judgment of condemnation had expired. Appellee had been lulled into security by the ordinance for a straight street, and thereby lost the legal remedy given him, and was compelled to apply to a court of equity for relief by injunction.

It was not controverted that the opening of the street as provided in the first ordinance would have been of great benefit to appellee's remaining land, and that the opening of it as contemplated in the last ordinance would not only not be of benefit, but would result in great damage to appellee. It was shown that by the last ordinance the land of appellee "would be cut in twain by an opening that could not be used for a street and that would lead nowhere."

Under the facts detailed, did appellant have authority, by reason of the condemnation proceedings, to take possession of appellee's land? We think the District Court properly answered this question in the negative. This is a case of first impression in Texas, and nothing directly in point has been brought to our notice, either in text-book or decisions of other States. We find authority, however, to the effect that any change made in the manner of construction of railroads from that indicated in the condemnation proceedings, which might increase the damages to the person whose property has been condemned, will necessitate new condemnation proceedings. Mills on Em. Dom., sec. 219; Boyd v. Negley, 53 Pa. St., 387.

In two cases in Illinois, where the plans of construction of railroads were changed after damages to the landowners had been assessed, it was held by the Supreme Court that the company would be bound to construct the road substantially according to the plans, and a failure to so construct would lay the road liable to increased damages. Railway v. Kidder, 21 Ill., 131; Railway v. Birkett, 62 Ill., 332.

The principle upon which the cases cited were decided is that the change in plan increased the damages, and the landholders would be entitled to recover such damages; but they do not touch on the question as to whether the validity of the original condemnation would be affected by the change of plans, or as to whether a party sustaining such increased damages could proceed by injunction.

In a New Jersey case a railroad company represented to the commissioners appointed to assess damages for the right of way over certain land, that the company would build an iron bridge over a low spot, and that the damages were assessed with that representation in view. The railroad company proceeded to throw up an embankment, instead of building the bridge, by which the damages would be increased; and the owner of the land obtained an injunction. It was held by the chancery court that the complainant had no adequate remedy at law, and that he was entitled to compensation for the injury that the company was about to inflict, and that they ought not to be permitted to inflict the injury upon him until just compensation had been made therefor. Carpenter v. Railway, 24 N. J. Eq., 249.

If an injunction would lie under the facts in the New Jersey case, we think it should be granted under the facts of this case, as the prayer for the writ in both would rest upon the same basis,—the increase in damages accruing by reason of a change from the plan in view when the proceedings of condemnation were had.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.