St. Louis River Dalles Improvement Co. *vs.* C. N. Nelson Lumber Co.

Argued May 26, 1892. Decided July 22, 1892.

**River Improvement Company—Right to Tolls.**

Under its charter the plaintiff made certain improvements in the St. Louis river, in clearing out the channel and in the erection of dams, in order to facilitate the driving of logs in the same, and in consideration of such improvements it was authorized to collect tolls. *Held,* that the plaintiff was not only obliged to construct, but to maintain, the requisite improvements, and the right to demand tolls depends upon the continued existence of such improvements.

**Same—When Dam Swept Away by Freshet.**

And where it appeared that the defendant's logs were swept down the river by a violent freshet, and passed through that portion thereof which plaintiff had undertaken to improve under its charter, but, before the arrival of the logs, certain dams constructed by it, and constituting a substantial part of such improvements, had been broken up and carried away, *held,* that the plaintiff was not entitled to collect tolls for the passage of such logs.

**Statutory Privileges Strictly Construed.**

Privileges conferred by statute in derogation of common right must be strictly construed.

Appeal by plaintiff, The St. Louis River Dalles Improvement Company, from an order of the District Court of Ramsey County, *Kerr*, J., made November 21, 1891, refusing a new trial.

The plaintiff, a corporation, was organized in 1874 under the General Laws of this state. The purpose of its organization, as set forth in its articles of incorporation, was the building of slack-water navigation upon, and improving the navigability of, the St. Louis River between certain points on the stream, embracing some thirteen miles of its course, by blasting rocks, removing obstructions, and building dams and such other structures and works of internal improvement as will facilitate the running of logs, and otherwise improve said river. Sp. Laws 1875, ch. 48, § 1, gives the corporation three years to finish and perfect its improvement of the river within those limits, to make the river, between the two points, navigable for the purpose of driving and floating down the river any and all pine saw-logs cut upon the banks of the river above. It grants full power to build and construct dams and wing-dams upon the river, and by removing obstructions within the bed of the river, to raise the water in the river, and to divert the current thereof. Section 2 provides that at the expiration of the three years specified, the corporation shall take and receive at the upper limit of the section of the stream before designated, all logs that may be driven down it and shall drive the logs down the stream to the lower limit of that section of the stream. Section 3 allows the corporation to receive and collect for the services rendered a specified toll for the logs so received and driven by the corporation between the points aforesaid. By subsequent legislation, the time for making the improvements was extended, and the rate of toll modified. The plaintiff made and completed the improvements contemplated and required by the several statutes.

The defendant, The C. N. Nelson Lumber Company, owned in 1888 a large number of logs in the St. Louis River, collected and held in the Knife Falls Boom, above the works of the plaintiff. In June of that year, these logs broke loose and were carried away down the river by the irresistible force of a freshet, through and beyond the limits of plaintiff's works. By the same freshet, and

before the logs reached the plaintiff's improvements, many of the dams and other works of the plaintiff in the river, were swept away and destroyed.

This action was brought by the plaintiff to recover the sum of $17,000, claimed to be due from defendant as tolls on the logs so driven by the freshet through the plaintiff's territory. It was first tried before *Vilas*, J., who at the close of plaintiff's testimony dismissed the action. After the death of Judge *Vilas*, a motion for a new trial was made and denied by *Kelly*, J., and the case was appealed to this court, where the order was reversed, April 8, 1890. *St. Louis River Dalles Imp. Co.* v. *C. N. Nelson Lumber Co.* 43 Minn. 130. The second trial was before *Kerr*, J., without a jury. On December 26, 1890, the decision of the court was filed, ordering judgment for the defendant. A motion by plaintiff for additional findings was made and was granted in part on October 7, 1891. The plaintiff moved for a new trial, which motion was denied November 21, 1891. From the order denying the motion plaintiff appeals.

Further facts in the case appear in the opinion. The arguments here were largely a discussion of the evidence, whether it justified the findings of the trial court.

*John M. Gilman, Henry J. Horn*, and *W. W. Billson*, for appellant.

*Warner, Richardson & Lawrence*, for respondent.

VANDERBURGH, J. The statutory powers and duties of the plaintiff corporation are set forth in the opinion on the former appeal herein, 43 Minn. 131, (44 N. W. Rep. 1080,) reference to which is here made. The plaintiff alleges in the complaint that it made and perfected the improvements in the St. Louis river contemplated and required by the several acts of the legislature mentioned in the complaint, in order to facilitate the running of logs in that portion of the river designated by the legislature, and that it was therefore entitled to charge and collect the tolls authorized for all logs coming within the limits of its jurisdiction, and run or driven through and beyond the same. That portion of the river designated in plaintiff's charter ex-

tended from the east line of township forty-eight (48) to the west line of township forty-nine (49,) range sixteen (16). The improvements consisted of the removal of obstructions and blasting out of rocks in the bed of the stream, and in the construction of dams to make slack-water navigation and to turn the water into the channel so as to make that portion of the river navigable for logs. This action is brought to recover a large sum of money for tolls upon logs of the defendant which had been collected and were held in the Knife Falls boom, above the works of the plaintiff, and in high water in the month of June, 1888, had broken loose, and been carried away by the irresistible force of the freshet, down the river and beyond the limits of defendant's jurisdiction.

The determination of this appeal depends largely upon the question whether certain findings of fact by the trial court are supported by the evidence. The court finds, among other things, that plaintiff's improvements consisted, as above stated, in blasting out and removing boulders and other obstructions from the bed of the stream, and constructing wing and roll dams for the purpose of confining water and logs in the current of the stream; the latter being the principal part of the improvements. "The said improvements altogether were suitable and sufficient to make said portion of the stream navigable for logs at the most favorable period of the driving season, but at no other time, and such favorable period lasted ordinarily not to exceed two or three weeks in the year. It was practicable, though not without considerable increased cost, to so plan and construct said improvements as to render said part of said stream navigable for logs, or so that logs could be driven down the same, whenever the stream above the plaintiff's limits was so navigable or drivable." It is further found that the flood which broke the booms and carried out defendant's logs also swept away or practically destroyed all of the plaintiff's works and improvements, save only the clearing out of the bed of the stream. This happened before defendant's logs reached plaintiff's works, and plaintiff's works and improvements were so swept away and destroyed from half a day to one day before any of defendant's logs reached the upper limits of plaintiff's territory, as

defined in its said articles of incorporation.   The evidence justified
the conclusion that the improvements made by plaintiff were availa-
ble to aid in driving logs in ordinary stages of water when it would
be safe and proper to turn out logs from the boom in the river above,
but the dams were not sufficient to withstand the force of the volume
of water and logs in this instance; and there is evidence in the case,
in defendant's behalf, which tends to prove that the dams were not
planned and constructed properly, and were not strong enough for
high water, and that in a freshet the action of the water alone was
sufficient to carry away or destroy the same.   The result shows that
the dams were so injured as to render them of no subsequent prac-
tical use in driving logs, until repaired or rebuilt, which has never
been attempted.   These dams, ten in number, were erected at dif-
ferent points along the stream within the designated territory, from
about one quarter of a mile to a mile apart.   There is evidence that
several were disrupted, and sections thereof carried out and down
the river, before the logs broke through the boom; among others, the
"roll dam," No. nine (9,) extending across the river, being about mid-
way or a little below that, between the upper and lower dams.   These
dams had become so dilapidated by the action of the water alone, as
to cease to be of any value as improvements for the navigation of
logs, before the arrival of the defendant's logs in that portion of the
river.   The testimony of the defendant's witnesses in respect to the
time when the particular dams in question were broken up, and in
respect to the condition of the rest after the flood subsided, and the
intrinsic defects in their construction as respects their sufficiency to
withstand high water, is all the evidence there is in the case to sup-
port the finding of the court in reference to the destruction of these
improvements before defendant's logs reached that part of the river;
but it is at least sufficient to show that some of the dams deemed
essential to the improvement of that portion of the river in which
they were placed, had before that time been practically destroyed,
and had ceased to be of any use for the purposes intended.   The im-
provements in that part of the river having gone out, it cannot be said
that the tolls were earned because the logs floated down upon the

flood. Nor is it material that all the dams had not gone out, or that other improvements in removing the obstructions from the bed of the channel were unaffected by the freshet.

It is a well-established rule that privileges conferred by statute in derogation of common right must be strictly construed; and the plaintiff was not entitled to demand tolls on logs after the improvements ceased to be such as the statute required to be constructed. *Swift River & B. B. Imp. Co.* v. *Brown,* 77 Me. 42.

The rights and duties of the plaintiff are reciprocal. The right to demand tolls depended upon the continued existence of the improvements; and as the court properly found upon the evidence, the most expensive and important part of the improvements was the construction and maintenance of the dams. *Lehigh Coal & N. Co.* v. *Brown,* 100 Pa. St. 338, 341; *Green River Co.* v. *Palmer,* 83 Ky. 647; *Chase* v. *Dwinal,* 7 Me. 137.

The evidence as to the damage to the improvements by the flood was all received without objection, and the case was tried as if the facts were properly pleaded. It is too late to raise the objection of the relevancy of the evidence.

The conclusion that the plaintiff is not entitled to recover the tolls demanded is justified, and the order denying a new trial must therefore be *affirmed.*

(Opinion published 52 N. W. Rep. 976.)