STATE ex rel. CITY OF MINNEAPOLIS v. ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY and Another.[1]

June 29, 1906.

Nos. 14,553—(17).

**Railroad Crossing.**

The state may, in the exercise of its police power, impose upon railroad companies whose lines intersect public highways laid out after the construction of the railroad the uncompensated duty of constructing and maintaining at such crossings all such safety devices as are reasonably necessary for the protection of the traveling public.

**Police Power of State.**

Such a requirement, being referable to the police power, is not a taking of private property for public use in violation of the constitution.

**Bridge Is "Safety Device."**

A bridge over the railroad tracks, when necessary to make the crossing safe for public use, is a "safety device," within the meaning of that expression.

**Construction of Franchises.**

Statutes granting franchises to corporations, involving rights of the public, are to be construed liberally in favor of the public and strictly against the corporation.

**Railroad Charter—Crossings over New Streets.**

The charter of the Minnesota & Pacific Railway Company, of which defendants are successors in interest, and subject to all its liabilities, contained the following provision:

"The said company shall have the right and authority to construct their said railroad and branches upon and along, across, under or over, any public or private highway, road, street, plank road, or railroad, if the same shall be necessary; but the said company shall put such highway,

[1]Reported in 108 N. W. 261.

road, street, plank road, or railroad, in such condition and state of repair as not to impair or interfere with its free and proper use."

*Held*, that this provision applies to streets and highways laid out over the railroad after its construction.

**Same.**

A railroad company receives its charter and franchise subject to the implied right of the state to establish and open such streets and highways over and across its right of way as public convenience and necessity may from time to time require. That right on the part of the state attaches by implication of law to the franchise of the railroad company, and imposes upon it an obligation to construct and maintain at its own expense, suitable crossings at new streets and highways to the same extent as required by the rules of the common law at streets and highways in existence when the railroad was constructed.

**Void Contract.**

A contract by a city, by which the police power is attempted to be forever abdicated, is ultra vires and void.

**Exercise of Police Power.**

Neither the state nor a municipal subdivision thereof, to which that power is delegated, can by affirmative action or by inaction permanently divest itself of the authority and power to exercise it.

Appeal by relator from a judgment of the district court for Hennepin county, Holt, J., dismissing proceedings in mandamus brought to compel defendants to erect and maintain a bridge over their tracks in Minneapolis. Reversed and new trial granted.

*Frank Healy,* for appellant.

It is admitted that the erection of the bridge in question is solely for the purpose of protection to human life and property. This being so, it is immaterial whether the railroad company's tracks antedated the laying out of the street in question or whether the street antedated the laying down of the railroad tracks. The duty of erecting the bridge is sought to be enforced through the exercise of the police power of the state. Camfield v. U. S., 167 U. S. 518; 2 Tiedeman, State & Fed. Cont. 999; Elliott, Roads & Streets, §§ 778, 780; Freund, Police Power, § 631; Thompson, Corp. § 5505; 3 Elliott, R. R. § 1102; State v. St. Paul, M. & M. Ry. Co., 35 Minn. 131; State v. District Court for Hennepin Co., 42 Minn. 247.

If the state has a right to compel a railroad company to construct and maintain cattle guards and sign boards at crossings, as held in the case last cited, it has equally a right to compel the construction at the expense of the company of any bridge necessary for public safety. Plymouth v. Pere Marquette, 139 Mich. 347; Louisville v. Smith, 91 Ind. 119; Illinois v. Copiah, 81 Miss. 685; Baltimore v. State, 159 Ind. 510.

If the bridge in question falls within the police power the duty rests upon the defendants to erect it at their own expense. Gillam v. Sioux City, 26 Minn. 268; State v. Shardlow, 43 Minn. 524. Whether the railroad antedates the laying out of the street or not is immaterial, for the reason that that matter was disposed of when the street was properly laid out and compensation rendered for the property taken. Chicago v. City, 140 Ill. 309; Detroit v. Commissioners, 127 Mich. 219; Lake Shore v. Cincinnati, 30 Oh. St. 604; State v. Chicago, 29 Neb. 412; Detroit v. Osborne, 189 U. S. 383.

The case at bar is not a case of condemnation of the highway over a railroad but is solely a question of enforcement of a police regulation to construct a bridge over a dangerous crossing, and condemnation decisions have no bearing upon this controversy. New York v. Bristol, 151 U. S. 556.

The provisions of the charter of Minnesota & Pacific Railway Co. requiring it to put streets and highways crossed by its tracks in good repair, properly construed, include streets and highways laid out over the right of way after the construction of the railroad. There is a continuing duty to maintain the highway so that it is safe for the traveling public and this duty devolves upon one who encroaches upon the highway. Manley v. St. Helens, 2 H. & N. 840; Chicago v. People, 200 U. S. 561. We do not claim that it is the duty of a railroad company to build highways, but we do claim that if a safety device becomes necessary because of the presence of the railroad then it becomes the duty as a matter of law and justice for the railroad company to provide that safety device.

The obligation to construct and maintain safe crossings at streets and highways laid out over the right of way after the construction of the railroad is imposed upon the railroad company at common law.

Manley v. St. Helens, supra; Commonwealth v. L. & N. R. Co., 109 Ky. 60; Illinois v. Chicago, 141 Ill. 586; Chicago v. City, 140 Ill. 309.

The police power is inherent in the state and may be exercised without express statutory authority. It is a common-law right incapable of being divested by any act of the state legislature. The construction of the bridge in question is required for the public welfare, convenience and safety and in compelling its construction the state exercises its police power.

A necessary bridge over railroad tracks is a safety device within the meaning of State v. District Court for Hennepin County, 42 Minn. 247.

*Rome G. Brown* and *Charles S. Albert,* for respondents.

Whatever the power of the legislature may be to enact statutes, whether under its police power or otherwise, to compel railway companies to build bridges over their rights of way along new streets, there has been no attempt in this state to exercise any such power by statutory enactment.

The street in question is not, and never has been, one crossing the tracks at the grade of the right of way. The necessity for the bridge now demanded does not arise from the operation of defendants' railways.

Defendant railway companies are not obligated to carry a street, by means of a bridge, across their right of way and tracks, where they are the senior occupants. State v. St. Paul, M. & M. Ry. Co., 35 Minn. 131, 140; State v. Minnesota Transfer Ry. Co., 80 Minn. 108; State v. Ensign, 54 Minn. 372; State v. Chicago, St. P. M. & O. Ry. Co., 85 Minn. 416, 421; City v. Chicago, 102 Iowa, 624; Hill v. Port Royal (S. C.) 5 L. R. A. 350; State v. Morgan, 111 La. An. 120, 35 South. 482; State v. Wilmington, 74 N. C. 143; Chicago v. City, 97 Wis. 418; Northern Central v. Mayor, 46 Md. 425; State v. Missouri, 33 Kan. 176; Dyer v. Railroad, 87 Tenn. 712; Commissioners v. Michigan, 90 Mich. 385; San Antonio v. Belt, 24 Tex. Civ. App. 281.

The legislature would not have the power, either under its police powers or otherwise, to enact and enforce a statute compelling railroads, without any provisions for compensation, to bridge along streets

laid out after the railroad was built. State v. District Court for Hennepin County, 42 Minn. 247; State v. Shardlow, 43 Minn. 526.

The contract embodied in the ordinance of 1892 is a valid contract. Where a contract is claimed by a municipality to be without consideration or ultra vires, the burden of showing all the facts necessary to establish that claim is upon those making the claim. The presumption is in favor of the validity of the contract. State v. Ensign, supra; State v. Minnesota Transfer Ry. Co., supra; Brown v. Board of Education, 103 Cal. 531; 14 Enc. Pl. & Pr. 243, and cases cited. The contract in question, having a valid consideration, is a valid and enforcible contract. State v. Chicago, St. P. M. & O. Ry. Co., supra.

Under the common-law rule, unless changed by statute, when a person or corporation, municipal or otherwise, laid out a way across the land, way, highway, street, or railroad right of way of another person or corporation, it was the duty of the junior occupant to bear all the expense of constructing and maintaining the crossings, which duty was a continuing one.

With respect to ways in general: Boston v. City, 159 Mass. 284. As applied to railroad crossings: The common-law rule, as it has always existed and been recognized, independent of statute, requires the construction and maintenance of crossings by railroad companies only in case where the railway rights of way have intersected pre-existing highways, and does not include the obligation to construct or maintain crossings along new streets. 1 Rorer, R. R., 555; Hill v. Port Royal (S. C.) 5 L. R. A. 350; Freund, Police Power, 631; State v. St. Paul, M. & M. Ry. Co., supra; State v. Minn. Transfer Ry. Co., supra; State v. Chicago, St. P. M. & O. Ry. Co., supra.

The provision of the charter of the Minnesota and Pacific Railroad Company (respondents' predecessor) does not require it to bridge along new streets or highways laid out over the right of way after the construction of the railroad; but was, in fact, and was only intended, as a statement of the common-law rule. State v. St. Paul, M. & M. Ry. Co., supra; State v. Ensign, supra; State v. Minneapolis & St. L. Ry. Co., 39 Minn. 219, 225; Cleveland v. City Council, 102 Ga. 233.

The obligation to construct and maintain safe crossings at streets and highways laid out over the right of way after the construction of the railway, as the same exists in this state, is an obligation imposed

purely by statute, pursuant to an exercise of the police powers of the legislature, and is not an obligation imposed upon the railroad company at common law. State v. Minneapolis & St. L. Ry. Co., supra; City v. Chicago, supra; Board of Co. Commrs. v. Duluth R. W. & S. R. Co., 67 Minn. 213; State v. District Court for Hennepin County, 42 Minn. 247. There is nowhere in this state any statutory requirement in terms or by any reasonable implication, by which a railroad company is obliged to build a bridge, either as a safety device or otherwise.

Assuming, for the purpose of argument only, that the provisions of respondents' charter include new streets, or that the obligation to construct safe crossings at new streets is imposed by the common-law rule, still the bridge demanded over the tracks in this case is not a "safety device" within the meaning of the decisions of this court. State v. District Court for Hennepin County, supra; Morris v. City, 63 N. J. L. 252.

BROWN, J.

Proceedings in mandamus to compel defendants to erect and maintain a bridge over their right of way and railroad tracks as the same extend across University avenue in the city of Minneapolis.

The facts, briefly stated, are as follows: The Minnesota & Pacific Railroad Company was incorporated by chapter 1, p. 3, Laws Minn. Terr. Ex. Sess. 1857; and defendants, St. Paul, Minneapolis & Manitoba Railway Company and the Great Northern Railway Company, are successors in interest, entitled to all its rights and subject to all its obligations and liabilities, in so far as involved in this proceeding. The line of railroad was constructed through the city of Minneapolis many years ago upon a right of way acquired by purchase, of which defendants are now the owners. Long after the construction of the railroad, in the year 1892, the council of the city of Minneapolis, pursuant to the provisions of its charter conferring authority to that end, duly laid out and opened the street in question over and across the railroad right of way, and it has since that time been used as one of the public thoroughfares of the city. At the time the street was opened, the city, at its own cost and expense, erected a bridge over the railroad tracks, and thereafter maintained the same until the year 1903, when it was

partly burned and practically destroyed; since which time there has been no passage over the tracks at this point. Subsequent to the destruction of the bridge the city council, by resolution duly adopted, ordered and directed defendants to construct a good and suitable bridge over their tracks at the intersection of this new street, at their own cost and expense. Plans and specifications were prepared by the city engineer under the direction of the council. Defendants refused to comply with the order, and thereafter these proceedings were commenced to compel a compliance therewith.

The matter came on for hearing before the court below, and was submitted for its determination upon a stipulation of facts, from which it appears, among other things, that the erection of the bridge is necessary to render the street crossing safe for public travel. This must be taken, for present purposes, as conclusive upon the question of the propriety and necessity of the proposed improvement. Of course, if this stipulation was entered into by counsel for defendants on the theory that this was not a grade crossing, and that the necessity for the bridge arises solely from the fact that the street was laid over the tracks, he is not bound by it, and the question of necessity will be open on a new trial. The court below held that, inasmuch as the street was laid out and opened subsequent to the construction of the railroad, the burden of erecting and maintaining the bridge rested upon the city, and not upon the railroad company. Judgment was entered, dismissing the proceedings, from which relator appealed.

The case is an important one, not only to the railway companies of the state, but to the numerous municipalities thereof as well. In a word, the turning point of the controversy is, shall the railway companies, or interested municipalities, bear the burden and expense of constructing crossings at streets and highways intersected by railroads, and maintaining them in a safe and suitable condition for public use, where the street or highway is laid out after the construction of the railroad? The precise question was not involved in any previous case in this court, except in a measure in State v. District Court for Hennepin County, 42 Minn. 247, 44 N. W. 7, 7 L. R. A. 121, which will be referred to hereafter; and whatever may be found in former opinions in analogous cases on the subject, must be treated as mere obiter remarks. Some conflicting views are apparent, but we are not required,

in disposing of the present case, to reconcile them.    The court is confronted with the principal question for the first time.    We have been assisted by exhaustive arguments by able counsel, have considered the subject thoroughly, and the result of our deliberations is, in our opinion, fully in accord with the legislative policy of this state respecting the matter in issue, and in harmony with the law and policy of other states. Several questions are presented by the record which will be considered in their logical order.

1. It is contended on the part of defendants that the proceedings laying out and establishing the street in question did not vest in the city the right to open the same on a grade with the railroad track; that a proper view of such proceedings, taken as a whole, will permit of no conclusion other than that the street was laid out up to the right of way and then over the same by means of a bridge, which was erected by and at the expense of the city.    A strict construction of the proceedings might sustain this contention; but we are of opinion that, fairly construed, a street was laid out across the right of way, and the city authorities thereby became vested with power to open the same at grade, or by an overhead crossing, as propriety, necessity, and public safety required.    It is unnecessary to go further into this phase of the case, and we pass to other more vital and important questions.

2. We come, then, to the question whether the state, in the exercise of its police power, may require railroad companies to construct, at their own cost and expense, suitable crossings at street and highway intersections, in cases where the street or highway was laid out subsequent to the construction of the railroad; and further, if that power be vested in the state, whether the legislature has, by any statutory enactment, imposed the obligation upon the respondents, or whether it rests upon them at common law.    It is insisted by defendants that there is no such obligation at common law; that the state has no power to cast the burden upon the railroads; and that if any statute exists which may be so construed, it is in violation of both state and federal constitutions, in that it denies to such companies the equal protection of the law, and operates to take from them their private property for public use, without compensation first paid or secured.

3. The question as to the power of the state, as respects streets and highways existing at the time of the construction of a railroad and over

which it passes, to require the latter to construct and maintain suitable crossings, by bridges, viaducts or otherwise, at its own expense, has been before the courts in numerous cases, and the uniform rule, so far as our examination of the authorities has extended, is that the state possesses that power. The obligation of the company in such cases arises from the rule of the common law that, where a new highway is laid out across one already in existence and use, the crossing must not only be made with as little injury as possible to the old way, but whatever structures may be necessary for the convenience and safety of the crossing must be erected and maintained by the person or corporation constructing and using the new way. Northern v. City, 46 Md. 425, 445; Dyer v. Railway Co., 87 Tenn. 712, 11 S. W. 943. The obligation exists in such cases independent of statute, and, as observed, the authorities enforce it in all cases where the streets were laid out and in existence before the advent of the railroad, and it extends to grade crossings, bridges, and viaducts, or whatever may be essential and necessary to make the crossing safe. If the duty to construct and maintain the bridge in question rests upon the railroad company, either by force of the provisions of its charter, or at common law, it is clear that the city may enforce it. Its specially delegated supervision and control over streets and highways, with authority to lay out and open new ones, vest in it authority to enforce all appropriate regulations sanctioned by the police power of the state. The obligation was enforced by the city of Minneapolis in the case of State v. Minneapolis & St. L. Ry. Co., 39 Minn. 219, 39 N. W. 153, without special statutory authority, the obligation existing, as it is contended it does in the case at bar, by force of the provisions of the charter of the railroad company.

4. The authorities are not fully agreed upon the question whether the state may, in the exercise of the police power, compel a railroad company, without compensation, to construct and maintain suitable crossings at streets extended over the right of way subsequent to the construction of the railroad. Our examination of the books, however, leads to the conclusion that the great weight of authority sustains the affirmative of that proposition. The right of the state so to act is maintained in the states of Maine, Connecticut, Illinois, New York, Tennessee, Indiana, Texas, Mississippi, Ohio, Nebraska, New Jersey, Vermont, Wisconsin, and by the supreme court of the United States.

It involves an exercise of the police power, and the inquiry is whether such a requirement is a proper exercise of that power. It is unnecessary to enter into an extended discussion to show the extent to which the legislature may go in the exercise of this governmental prerogative. The property, rights, and liberty of the citizen are to be enjoyed in subordination to the general public welfare, and all reasonable regulations for the preservation and promotion thereof are uniformly sustained by the courts. "Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations, established by law, as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient." Com. v. Alger, 7 Cush. 53, 85; Thorpe v. Rutland, 27 Vt. 140, 62 Am. Dec. 625; New Orleans Gas Co. v. Drainage Commission of New Orleans, 197 U. S. 453, 25 Sup. Ct. 471, 49 L. Ed. 831. The reasonable limits of the exercise of the power are not readily defined, but generally speaking it extends to all matters where the general public welfare, morals, and health of the community are involved. Butler v. Chambers, 36 Minn. 69, 30 N. W. 308, 1 Am. St. 638.

A reference to a few of the adjudged cases will show the general trend of judicial opinion upon the subject before us. In Boston v. County Commrs., 79 Me. 386, 10 Atl. 113, the court had before it a statute imposing upon the railroad companies of that state the duty of constructing crossings at subsequently laid-out highways, and its validity was affirmed. The court there said: "The power of the legislature to impose uncompensated duties and even burdens upon individuals and corporations for the general safety is fundamental. It is the police power. Its proper exercise is the highest duty of government. The state may in some cases forego the right to taxation, but it can never relieve itself of the duty of providing for the safety of its citizens. This duty and consequent power override all statute or contract exemptions; the state cannot free any person or corporation from subjection to this power. All personal as well as property rights must be held subject to the police power of the state."

In the case of Chicago v. City, 140 Ill. 309, 29 N. E. 1109, the court had before it a case where the city instituted condemnation

proceedings for the purpose of opening and extending a street across a railroad already in existence, and the question presented was whether the company owning the railroad was entitled, as a part of its compensation for opening the street across its tracks, to the cost of constructing and maintaining the crossing. It appeared that the railroad was constructed prior to the passage of a statute which required all railroad companies thereafter to construct and maintain such crossings and all approaches thereto. It was insisted that the statute was invalid, and had no application to the defendant because its road was constructed prior to the opening of the street and prior to the enactment of the statute. In that case the court said: "Government owes to its citizens the duty of providing and preserving safe and convenient highways. From this duty results the right of public control over highways. Railroads are public highways, and in their relations as such to the public are subject to legislative supervision, though the interests of their shareholders are private property. Every railroad company takes its right of way subject to the right of the public to extend the public highways and streets across such right of way. * * * If railroads so far as they are public highways are, like other highways, subject to legislative supervision, then railroad companies in their relations to highways and streets which intersect their rights of way are subject to the control of the police power of the state; that power of which this court has said that 'it may be assumed that it is a power coextensive with self-protection, and is not inaptly termed the law of overruling necessity.' Lake View v. Rose Hill Cemetery Co., 70 Ill. 191, 22 Am. 71. The requirement embodied in section 8 (2 Starr & C. Ann. St. 1885, p. 1937, c. 114), that railroad companies shall construct and maintain the highway and street crossings and the approaches thereto within their respective rights of way, is nothing more than a police regulation. It is proper that the portion of the street or highway which is within the limits of the railroad right of way should be constructed by the railroad company and maintained by it, because of the dangers attending the operation of its road. It should control the making and repairing of the crossing for the protection of those passing along the street and of those riding on the cars. * * * The items of expense for which appellant claims compensation are such only as are involved in its compliance with a police regulation of the

statute. It is well settled that 'neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation designed to secure the common welfare.' C. & A. R. R. Co. v. J. L. & A. R. R. Co., 105 Ill. 388, 44 Am. 799. It has been held by this court in a number of cases that railroad corporations may be required to fence their tracks, to put in cattle guards, to place upon their engines a bell, and to do other things for the protection of life and property, although their charters contained no such requirements. * * * G. & C. U. R. R. Co. v. Dill, 22 Ill. 264; O. & M. R. R. Co. v. McClelland, 25 Id. 140; P. & P. U. Ry. Co. v. P. & F. Ry. Co., 105 Id. 110. * * * Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking or damaging without just compensation of private property, or of private property affected with a public interest. * * * The language of section 8 is broad enough to include streets to be thereafter opened or extended as well as to existing streets. * * * There is no reason for supposing that the legislature intended to refer exclusively to a railroad crossing, created by running a new railroad across an existing street. The language includes also a railroad crossing created by running a new street across an existing railroad."

The supreme court of the United States, in 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979, in reviewing the case of Chicago, B. & Q. R. Co. v. Chicago, 149 Ill. 457, 37 N. E. 78, after quoting the above excerpt from the prior Illinois decision, said: "We concur in these views. The expenses that will be incurred by the railroad company in erecting gates, planking the crossing, and maintaining flagmen, in order that its road may be safely operated—if all that should be required—necessarily result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchises granted by the state. Such expenses must be regarded as incidental to the exercise of the police powers of the state." See also Detroit, F. W. & B. I. Ry. v. Osborn, 189 U. S. 383, 23 Sup. Ct. 540, 47 L. Ed. 860; New York & N. E. R. Co. v. Bristol, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269.

In Chicago v. City, 97 Wis. 418, 72 N. W. 1118, the supreme court of Wisconsin reviewed the subject at length and reached the con-

clusion that the subject of crossings at streets laid out after the construction of the railroad was a proper subject for legislative control, within the police power, and the obligation to construct them might be imposed upon the railroad company without compensation. The opinion in that case points out that the decisions of the supreme court of the state of Massachusetts, which apparently laid down a different doctrine, were founded upon a statute of that state, by which the expense of such crossings was imposed upon the municipality. In the course of the discussion the court said: "The correct policy, in our judgment, is that held by the courts of New York, Maine, Illinois, and Iowa, that the probable results of a failure of duty, respecting the safety of railway crossings, are so serious that the public interests require, as between municipalities and railway corporations, that such duty be lodged in some one place, undivided, absolute, and with certainty, and that such place be the one where, in the estimation of legislative authority, it can be most readily, economically, certainly, and efficiently performed. Whichever place is designated, the municipalities owning the highways, or the railway corporations, the expense directly or indirectly falls on the public. These considerations are abundantly sufficient, judicially considered, to legitimately locate the whole subject of maintaining safe crossings within the domain of the police regulations, so far as the legislative branch of the government may see fit to exercise its authority. It needs no extension of well-settled principles to reach this conclusion. But if it did, the increase of railroad operations, the growth of population and social and business activities, with consequent increasing dangers to persons and property, might reasonably warrant the extension. This tendency of modern development is in the direction of greater, rather than more restricted, use of police power, and necessarily so in order to meet the new dangers, and increase of old dangers, constantly occurring as natural incidents of advancing civilization. We think the weight of modern authority is in accord with the views just expressed, and to the effect that everything that goes to make up a crossing, safe for public use, is as essentially within police regulations as any part of it."

It was held immaterial, as respects the right of the state to require those things to be done, whether the highway be laid out before or after the construction of the railroad. Their statutes were, however, strictly

construed, and held not broad enough to include subsequently laid-out streets, though an "obvious legislative policy" so imposing the obligation upon the railroads was recognized.  In People v. Boston, 70 N. Y. 569, the railroad company, long after it had constructed its road, was required by statute to construct a bridge over its track at an intersecting highway, and the act was sustained as a proper exercise of the police power.  The court in that case said, in substance, that while the legislature could not confiscate property under a pretence of an exercise of the police power, yet it might impose upon railroad corporations such reasonable restrictions, regulations, and burdens as the public good required; could regulate the speed of trains, the way in which they should cross highways, and make all regulations proper to protect the lives of persons carried by them or passing upon the highways across the track.  See also Albany v. Brownell, 24 N. Y. 345; Boston v. Greenbush, 5 Lans. 461.

It was held by the supreme court of Tennessee, in City v. Southern (Tenn.) 82 S. W. 213, that an act of the legislature of that state empowering cities to require railroad companies to construct bridges at places where their tracks crossed the public streets, being referable to the police power, applied to railroads whose tracks were laid before the streets were opened or the city was incorporated.  In that case the railroad was constructed and in operation many years before the city of Harriman, which sought therein to compel the company to construct a bridge, was founded.  It was incorporated by the legislature long after the appearance and location of the railroad, and numerous streets were laid out over the railroad right of way.  In Illinois v. Swalm, 83 Miss. 631, 36 South. 147, the court held that a railway company might be required to place a bridge over its road and to grade approaches thereto for a highway crossing it, though the railroad was in operation for many years before the highway was laid out.  It appeared, in that case, that the proposed new highway crossed the tracks of the railroad company at a point where there was a cut fifteen feet deep and fifty feet wide, in which the double tracks of the road were located.  The court applied the rule of the cases already referred to, following a prior decision of that court.  Illinois v. Copiah, 81 Miss. 685, 33 South. 502.

The same doctrine is affirmed in Texas v. Milam, 90 Tex. 355, 38 S. W. 747. The court in that case sustained an act of the legislature imposing the duty upon railroad companies of constructing crossings over public highways, and held that it applied to cases where the highways were laid out by the county subsequent to the building of the railroad, as well as to previously existing highways, and that the expense of grading such crossings, putting in cattle guards, drain pipes, sign boards, and crossing planks formed no part of the damages which the company was entitled to recover on account of the condemnation of its right of way for highway purposes. Such is the law in Connecticut (Woodruff v. Catlin, 54 Conn. 277, 6 Atl. 849), in Nebraska (State v. Chicago, 29 Neb. 412, 45 N. W. 469; Chicago v. State, 47 Neb. 549, 66 N. W. 624, 41 L. R. A. 481, 53 Am. St. 557), in Ohio (Railway Co. v. Sharpe, 38 Oh. St. 150), in Vermont (Thorpe v. Rutland, 27 Vt. 141, 62 Am. Dec. 625), and in Indiana (Evansville v. State [Ind. Sup.] 49 N. E. 2; Lake Erie v. Cluggish, 143 Ind. 347, 42 N. E. 743; Lake Erie v. Shelley, 163 Ind. 36, 71 N. E. 151). See also Chicago v. People, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596.

5. A contrary doctrine may be said to be the law in the states of Kansas, Louisiana, and Michigan, but the great weight of authority, as shown by the foregoing citations, sustains the general proposition that the police power will uphold legislation of this kind. That the state has such authority, as respects all devices necessary for the safety and protection of the public, has been held by this court. State v. District Court for Hennepin Co., 42 Minn. 247, 44 N. W. 7, 7 L. R. A. 121; State v. Minneapolis & St. L. Ry. Co., 39 Minn. 219, 39 N. W. 153; State v. Minnesota T. Ry. Co., 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656. In the case first cited the court held that, where the highway was laid out over and across the railroad tracks, the company was not entitled to compensation for providing and maintaining cattle guards and sign boards at the new crossing, but was entitled to compensation for planking the roadway where it crosses the railroad tracks and for the maintenance of the same. The decision in that case is in harmony with the rule laid down in Kansas and Massachusetts, but is at variance with all other courts whose decisions we have cited. The theory of this court in that case was that planking the tracks was a part of the work of constructing the highway, and in no sense a safety

device or necessary for the protection of the traveling public, and did not come within a proper exercise of the police power. That case, however, sustains the general proposition that safety devices may be required at new streets; and sustains the contention of relator, if the bridge in question comes within the meaning of a safety device. But the decision rested upon the general statutes requiring cattle guards and gates to be constructed, and is not here directly in point. What was said in State v. St. Paul, M. & M. Ry. Co., 35 Minn. 131, 28 N. W. 3, 59 Am. 313, with reference to the construction of the statute there before the court, as respects streets laid out after the location of the railroad, was not intended as a decision of the question. That question was not involved in the case, and the remark was made for the purpose of indicating that the decision was intended to be limited to existing streets only.

6. Counsel for defendants attempted to distinguish many of the cases cited as supporting the contention of the relator, on the ground that they involved grade crossings only. The cases cited from Tennessee, Indiana, and Mississippi involved the construction of bridges over the tracks of the railroad company, but, as urged by counsel, the other cases concerned only grade crossings. But there can be no difference on principle, in so far as an exercise of the police power is concerned, between a grade crossing and a bridge over the tracks. The difference between the two is one of degree, relating solely to the matter of expense. But the expense incident to a compliance with police regulations is not an element of consideration, except, perhaps, where arbitrary and unreasonable, or resulting in a practical confiscation of property. Cases where one railroad crosses another have no application, because both stand on an equality respecting rights and obligations, while in cases like that at bar the rights of the public are superior.

7. If, then, it is within the authority of the state, in the exercise of its police power, to require railroad companies to construct and maintain crossings, either at grade, or above or below the tracks, at streets laid out after the construction of the road, it becomes necessary to inquire whether the legislature of this state has so declared or ordered by any statute, or whether the obligation rests upon the railroad company at common law.

The charter of the Minnesota & Pacific Railroad Company, predecessor of defendants, provides as follows:

> The said company shall have the right and authority to construct their said railroad and branches upon and along, across, under or over, any public or private highway, road, street, plank road, or railroad, if the same shall be necessary; but the said company shall put such highway, road, street, plank road, or railroad, in such condition and state of repair as not to impair or interfere with its free and proper use. Laws Extra Sess. 1857, p. 6, c. 1, § 7.

A statute very similar to this was held applicable to new streets by the Indiana supreme court (Louisville v. Smith, 91 Ind. 119), and the rule announced by that court may be said to have been applied in effect, by other courts, as shown by the cases cited (Chicago v. City, 140 Ill. 309, 29 N. E. 1109).

While the statute on its face might be construed as intended to apply to existing highways only, a fair and reasonable construction thereof, in view of the legislative policy of the state on this subject, and the propriety and necessity for some specific regulation, will bring within its scope and purpose streets and highways subsequently laid out and opened. It is elementary that charters of public corporations, in which the rights of the public are involved, are to be construed with strictness against the corporation, and liberally in favor of the public. St. Louis R. D. Imp. Co. v. C. N. Nelson Lumber Co., 51 Minn. 10, 52 N. W. 976; Com. v. Erie, 27 Pa. St. 339, 67 Am. Dec. 471. Or, as said by the New York Court of Appeals, in Tracy v. Troy, 38 N. Y. 433, 98 Am. Dec. 54, an act of the legislature, induced by public considerations, the purpose of which is to protect the traveling public, should receive a liberal construction to effectuate the purpose of its framers. "A rigid and literal reading would in many cases defeat the very object of the statute and exemplify the maxim that 'the letter killeth, while the spirit keepeth alive.'" The operation of statutes is often extended, by construction, to matters of subsequent creation and applied to conditions that accrue after their passage, as well as to those that existed before. Wilberforce, St. L. 166; Kline v. Minnesota Iron Co., 93 Minn. 63, 100 N. W. 681; Schus v. Powers-Simpson Co., 85

Minn. 447, 89 N. W. 68, 69 L. R. A. 887. In those cases we construed the fellow-servant statute, which, on its face, applied to commercial railroads, to apply to "logging" railroads, though they were unknown when the statute was enacted; and the construction there given was sustained by the supreme court of the United States in Minnesota Iron Co. v. Kline, 199 U. S. 593, 26 Sup. Ct. 159, 50 L. Ed. 322.

The language of statutes, when under liberal construction, is flexible, and general words admit of more than one interpretation. The court may carry the statute beyond the natural import of its words when essential to answer the purpose of the legislature. Black, Inter. Laws, 307, 315; 2 Sutherland, Stat. Const. (2d Ed.) 582, et seq.; Avery v. Town, 36 Conn. 304; Smith v. Stevens, 82 Ill. 554; Vigo's Case, 21 Wall. 648, 22 L. Ed. 690. It is an "old and unshaken rule in the construction of statutes, to wit, that the intention of a remedial statute will always prevail over the literal sense of its terms, and therefore when the expression is special or particular, but the reason is general, the expression should be deemed general." Brown v. Pendergast, 89 Mass. 427. A large construction is to be given to statutes having for their end the promotion of important and beneficial public objects. Town v. Pond, 19 Conn. 597. In Silver v. Ladd, 7 Wall. 219, 19 L. Ed. 138, the supreme court of the United States applied this rule to an act of congress granting lands to certain settlers, and held that the words "single man" included unmarried women. A statute of Alabama provided that whenever an officer, required by law to give an official bond, acts under a bond "which is not in the penalty payable and conditioned as prescribed by law," such bond is not void but stands in the place of the official bond, subject, on its conditions being broken, to all the remedies which the person aggrieved might have had upon the bond, had it been executed in conformity with the law. The court held that the statute, being a remedial one, should be construed to apply to a bond properly conditioned, but defectively executed. Sprowl v. Lawrence, 33 Ala. 674, 685. Numerous illustrations of the application of this rule to various statutes will be found referred to in 2 Sutherland, Stat. Const. (2d Ed.) § 593, et seq. See also Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. Ed. 773, 938.

The purpose of incorporating this particular provision in the charter of the railroad company was in the interests of the public, and to re-

quire the railroad company to keep in good repair all crossings at the intersection of highways; and, though it may be said to be declaratory of the common law, the general rules of statutory construction apply to its interpretation. At the time the legislature granted the charter of the railroad company in 1857, the city of Minneapolis was a small village, and the territory to the north and west through which the proposed line of railroad was to extend was a vast wilderness, occupied by roving bands of Indians. It was in the mind of the legislature, at that time, that the city of Minneapolis would increase in population and ultimately become a large city; that the state through which the road was to be constructed would develop and improve; that settlers would make their homes upon the public lands; and that villages and cities would spring up along the line of the railroad, thus rendering new streets and highways an absolute necessity for public use. Respondent's charter was granted with the reserved right on the part of the state to construct new highways and streets over its line of railroad, wherever made necessary by the future development of the state. It is not, therefore, in view of this condition, which was in the mind of the legislature and the railroad company, unreasonable to believe that they contemplated, when providing for the care of highway and street crossings, not only those then existing, but such as might thereafter, in the course of the growth and development of the state, become necessary to be laid across the railroad's right of way. The evils intended to be guarded against are the same and apply equally to both new and old streets. There was no reason why the legislature should deem it prudent to provide for existing highways only; and we do no violence to the rules of statutory construction in holding that the provisions of defendant's charter were intended to include all streets and highways intersected by railroads, whether laid out before or after the building of the railroad. The expression of the statute is special, perhaps; but the reason therefor is general. The expression must therefore be deemed general. Brown v. Pendergast, supra.

A railroad company accepts and receives its franchise subject to the implied right of the state to lay out and open new streets and highways over its tracks, and must be deemed, as a matter of law, to have had in contemplation at the time its charter was granted, and is bound to assume, all burdens incident to new, as well as existing, crossings.

This feature of the case was before this court in State v. District Court for Hennepin County, 42 Minn. 247, 44 N. W. 7, 7 L. R. A. 121. That case involved the general statutes requiring cattle guards and sign boards to be erected at crossings, which, on their face, like the provisions of respondent's charter, have at least apparent reference to highways crossed by railroad lines. It was there insisted that the requirement had no application to new streets, and that the railroad company was entitled to compensation for their construction to be allowed as damages for opening the new street over the right of way. The court held that the statute applied to new streets, but that the company was entitled to compensation for planking the crossing. In the course of the opinion, the court said, in substance, that, although the street involved in that case was not in existence when the railroad was constructed, and hence the requirement of the statute referred to did not impose the duty of putting in cattle guards and sign boards at the particular place at that time, yet as soon as the street was laid out and opened, the existing statute became applicable and required those things to be done; that the circumstances, with reference to which the statute as a police regulation applied, came into existence by the location of the new street, and the requirements of the statute became operative. "When the railroad company accepted its charter, it received its franchises subject to the authority and power of the state to impose such reasonable regulations concerning the use, in matters affecting the common safety, of its dangerous enginery, and not merely subject to the then existing regulations as applicable to then existing conditions; and whether the obligation now in question had been imposed at this time by direct act of the legislature, or, as is the case, arises from the laying out of a new highway, to which the previously existing law becomes applicable, can make no difference." The court further said that, when the franchise was granted to the railroad company to construct and operate its railroad, it was not contemplated either by it or by the state that no more public highways should be laid out which would increase the number of places where the ordinary police regulations would have to be complied with by the railroad company to its inconvenience and expense; on the contrary, that it must have been understood and contemplated, especially in a new state, rapidly advancing in population and in the development of its resources, where new towns were spring-

ing up and new avenues for travel and traffic were becoming necessary, that new streets and roads would and must be laid out, and that many of these would necessarily cross existing railroad lines; and "we cannot resist the conclusion that, so far as concerns the matter now under consideration, the charter of the relator was taken subject to the right of the state to impose this duty whenever, by reason of the establishing of new highways, it should become necessary; and hence the relator is not entitled to compensation for obedience to this requirement"— citing Lake Shore v. Cincinnati, 30 Oh. St. 604; Chicago v. Joliet, 105 Ill. 388, 44 Am. 799; City v. Hannibal, 49 Mo. 480; City v. New York, 36 Conn. 255, 4 Am. 63.

The reasoning of the court in that case applies to the case at bar. In conclusion, on this branch of the case, we say, as was said by the Indiana supreme court in Louisville v. Smith, 91 Ind. 119, that the provisions of the railroad charter should not receive the literal and restricted construction contended for by respondent. Neither the interest of the railroad company nor of the public require it.

8. Again, we are clear that the obligation is imposed upon the railroads at common law. The common-law doctrine, that where a street or highway is laid over one already in existence, the expense of making the crossing safe rests upon the company or corporation using the new way, had its origin when railroads were unknown, at a time when the use of all highways, generally speaking, was of the same general nature, the traffic or use of either not being inherently dangerous to the free use and enjoyment of the other. Not so where a railroad crosses a public street, or a street a railroad. In such a case the operation of trains over the latter, particularly in our large cities, is highly dangerous and a menace to the public using the intersecting street. The railroad company is alone responsible for this condition, and, though it has an unquestioned right to operate its trains in such manner as the practical conduct of its business may require, the dangers resulting therefrom are of its own creation, and on every principle of right and wrong it should bear the burden of protecting the public so far as practicable from accident or injury.

The common law is not a codification of exact or inflexible rules for human conduct, for the redress of injuries, or protection against wrongs, nor yet a mere figment of judicial genius; but, on the contrary,

is the embodiment of broad and comprehensive unwritten principles, inspired by natural reason, an innate sense of justice, adopted by common consent for the regulation and government of the affairs of men. It is the growth of ages, and an examination of many of its principles, as enunciated and discussed in the books, discloses a constant improvement and development in keeping with advancing civilization and new conditions of society. Holmes, Common Law, 1–5, 36, et seq. Its guiding star has always been the rule of right and wrong, and in this country its principles demonstrate that there is in fact, as well as in theory, a remedy for all wrongs. The principles governing the rights and liabilities of individuals are often inapplicable to railroad companies, or other corporations, clothed as they are by the state with special rights, powers, and privileges, not enjoyed by individuals. The nature and character of the business of railroad companies, the numerous hazards and dangers connected with the conduct of their affairs, render the law for the individual inappropriate and inefficient, and the courts, in testing the various pertinent principles in connection with their peculiar features, have, by methods of differentiation and analogy, evolved new and appropriate rules for the determination of their rights and liabilities. 5 Harvard Law Rev. 189.

It is insisted that the rule of the common law above referred to applies to and governs the position of relator in the case at bar, imposing the obligation of constructing the bridge in question upon the city, because the street was laid over the existing railroad. The rule in its abstract form can have no application to facts and conditions such as here shown, and cannot be held to impose upon the municipality the burden of constructing safety devices to protect pedestrians from dangers caused solely by the railroad company. In view of the fact that the railroad company takes its franchise subject to the reserved right of the state to lay new streets over and across its track, and in contemplation that it may do so (Chicago & N. W. Ry. Co. v. City of Chicago, 140 Ill. 309, 29 N. E. 1109; Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979; State v. District Court for Hennepin County, 42 Minn. 247, 44 N. W. 7, 7 L. R. A. 121), and the further fact that the company is solely responsible for the necessity of safety devices at street crossings, the same being occasioned by the operation of its trains over and across the street, and the further

elementary principle that he who creates and maintains upon his premises a condition dangerous and inimical to others is under legal obligation to so guard and protect it that injury to third persons may not result therefrom, the rule of the common law as to existing, must be held to apply equally to new, streets. The right of the state to lay out and open new streets is a condition attached by implication of law to the charter and franchise of the railway company, and the obligation to maintain the street intersections in good repair is a continuing one, follows the franchise, and applies to new streets or highways as soon as they come into existence.

9. It follows, from what has been said, that the obligation to construct and maintain the bridge in question rests upon defendant, unless it is a part and portion of the crossing, for which, within State v. District Court for Hennepin County, supra, it is entitled to compensation, and in no sense a safety device. The court, in the case just referred to, held that the railroad company might be required to construct safety devices at new streets, the planking for the crossing being held in that case not to come within the scope of that expression. So, if the proposed bridge constitutes a safety device, within the meaning of that term, relator's contention must be sustained, and the order of the court below reversed. That it comes within the meaning of that expression we have no serious doubt. It appears from the record that a number of railroad tracks cross this particular street, which is in a populous part of the city and constantly used by the citizens; that trains are frequently operated over and across the same, rendering the crossing dangerous and unsafe for public use. The purpose of planking between the rails is to make the street passable over the track. But the purpose of a bridge over the tracks is for safety, and for safety alone. There can be no distinction between it and gates or sign boards. They answer the same purpose. "Everything that goes to make up a crossing safe for public use is as essentially within police regulations as any part of it." Chicago v. City, 97 Wis. 418, 72 N. W. 1118.

10. In the year 1892 the city council of the city of Minneapolis enacted a certain ordinance requiring the respondents to construct certain bridges and approaches thereto at the intersection of certain streets with the railroad tracks. By section 8 of that ordinance, the city council, on behalf of the city, expressly agreed that, in consideration

of the performance of the conditions of the ordinance by the respondents, the city would thereafter construct and maintain all crossings or approaches made necessary by the opening of new streets. It is contended by respondents that this ordinance constituted a valid contract with the city, and, having been complied with on their part, it is beyond the power of the city to now require them to construct the bridge in question; that to require it to do so would impair the obligations of the contract, in violation of both state and federal constitutions. In this we do not concur. The power of the state to require the defendants to construct the bridge in question, or any other bridge, at streets crossing the right of way, is an exercise of the police power, which can be neither contracted away nor lost by inaction on the part of the public authorities. The contract was beyond the authority of the city council and ultra vires and void. State v. Minnesota T. Ry. Co., 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656; 5 Current Law, 637, note 71; City v. Rochester, 182 N. Y. 99, 74 N. E. 953, 70 L. R. A. 773; 36 Cent. Dig. cols. 1760, 1761, § 1315. See also Chicago, B. & Q. R. Co. v. Omaha, 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948, where the subject is fully considered. Though the contract before the court in the case last cited was held valid so long as acted on by the parties, the court said that it might be repudiated at any time by the municipality. In the case at bar, the contract was repudiated by the city when its council adopted the resolution requiring defendants to construct the bridge. The resolution was sufficient for that purpose. City of Alma v. Guaranty Sav. Bank, 19 U. S. App. 622, 60 Fed. 203, 8 C. C. A. 564; Atchinson Board of Education v. De Kay, 148 U. S. 591, 13 Sup. Ct. 706, 37 L. Ed. 573; City v. Chicago, 92 Ill. 21.

It is probable that this whole matter was set at rest by the last legislature, for the future at least, by the enactment of chapter 280, p. 413, Laws 1905. But that statute is not here involved, for this proceeding was commenced prior to its passage.

Judgment appealed from is reversed and a new trial granted.